Gregory A. IVEY, Plaintiff–Appellee,

v.

George WILSON, Ron Hanley, Lt. Barnes, Robert Hendricks, Dewey Sowders, Capt. Barnett, Phil Parker, Andy Knight, and Tom Stewart, Defendants–Appellants.

No. 85–5903.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1986.

Decided Nov. 4, 1987.

---

G. Edward Henry, II (argued), Clem, Henry and Watz, Lexington, Ky., for defendants-appellants.

Nancy M. Curtis (argued), Lexington, Ky., for plaintiff-appellee.

Before KEITH and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

PER CURIAM.

This is an appeal by a number of prison officials from a judgment awarding compensatory and punitive damages on a jury verdict in favor of a convict who brought suit under 42 U.S.C. § 1983. Finding that the defendants waived any qualified immunity defense, we shall affirm the judgment insofar as it awarded compensatory damages against certain of the defendants for violations of the plaintiff's due process rights; in all other respects the judgment will be reversed.

I

The plaintiff, Gregory A. Ivey, was an inmate in the Kentucky State Penitentiary at Eddyville. The matters before us on appeal stem from four incidents that occurred during Mr. Ivey's incarceration in that institution. On March 20, 1980, the date of the first incident, Mr. Ivey entered the protective custody unit to see prisoners there on legal business. (Mr. Ivey's work assignment was to furnish legal assistance to other prisoners.) Mr. Ivey entered the unit with half a pack of cigarettes, and a pat-down search revealed four additional packs of cigarettes when he left. Accused of charging inmates for legal services, Ivey was placed in segregation pending a hearing six days later.

Mr. Ivey testified that he believed that Defendant Hanley was the person who ordered him into segregation. Ivey said that the guard who found the cigarettes telephoned "somebody whom I thought was Defendant Ron Hanley, and all I heard was like one end of the conversation was when J.R. Owens [the guard] hung up, he told another officer who was present, he says Hanley says to write him up and lock him up for charging inmates for legal services." A prison log, however, indicates that the lock up was ordered "per Hendricks."

Defendant Tim Barnes investigated the incident. His investigation led to a hearing by an adjustment committee that included among its members Defendants Ron Hanley and Robert Hendricks. At the hearing Ivey claimed that he was given the cigarettes in exchange for services other than the legal services called for by his prison job. Ivey refused to say who gave him the cigarettes, and the authorities were thus unable to check the veracity of his story. The committee ruled that Ivey had improperly accepted payment for legal services and removed him from his legal aide position. In addition, Ivey was sentenced to six days in administrative segregation, with credit for the six days already served. The findings of the adjustment committee were upheld by Defendant (and then-Warden) Dewey Sowders.

The second incident began on January 22, 1983, when a prison guard named Hatfield told another guard, Defendant Andy Knight, that he (Hatfield) thought he saw Ivey put something in his coat pocket. Officer Knight then subjected Ivey to a strip search that included a search of body cavities. Ivey threatened to file a grievance, and Officer Knight, although he found no contraband, filed an incident report against Ivey for not carrying proper identification and for threatening Officer Knight with filing the grievance ("interfering with an officer").

Ivey went to the grievance office to file a complaint against Officer Knight concerning the search. While he was attempting to file the grievance, Defendant Tom Stewart and two other guards took Ivey to a hospital security cell to test him for drug and alcohol use. The guards claimed that they thought they smelled "home brew" on Ivey's breath. Urinalysis proved to be negative. On January 23, possibly because Ivey refused to submit to a blood test in addition to the urinalysis and possibly because of the incident report filed by Officer Knight, Defendant Harry Barnett ordered that Ivey be put in prehearing segregation. Captain Barnett said he completed a prehearing detention form, but no such form was ever produced. Ivey was returned to his cell on the morning of January 24 to pack his belongings, and was then taken back to segregation. Later in the day the warden ordered Ivey released from segregation. The appellant prison officials explain the release as having been based on the warden's review of the form purported-

ly prepared by Captain Barnett; the facts stated in that form are said not to have justified segregation.

The third incident occurred on February 13, 1983, when Ivey became upset at Officer Knight for a supposed 15–minute delay in turning on the telephone lines that morning. (Officer Knight denied any delay.) Ivey filed a grievance. The grievance was denied because of records showing that the phones were activated on time and because the "log [did] not indicate that [Ivey] even used the phone that day." Ivey produced records at trial showing that he did make a phone call at 8:39 a.m. on February 13. (The phones were supposed to be turned on at 8:30 a.m., but Ivey claimed this was not done until 8:45.)

The last incident involved the head of "penitentiary program services," Phil Parker. On August 15, 1983, Mr. Parker reportedly recommended that Ivey be dismissed from his legal aid position (to which he had been reinstated by this time) because he called one Officer Newsome a liar in front of other legal aides and staff. Parker said in a "Dismissal from Work Assignment" form that "[w]e do not need inmate legal aides who can not get along with supervisors and show respect."

## II

Although the parties ask us to use a "clearly erroneous" standard of review, that would not be appropriate in assessing the factual findings of a jury. "In reviewing the jury verdict, we may not substitute our view of the facts for the jury's, unless 'reasonable minds viewing the evidence in the light most favorable to the prevailing party, could only have found otherwise than the trier of fact.'" *Ikpeazu v. University of Nebraska*, 775 F.2d 250, 255 (8th Cir.1985) (quoting *McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155, 158 (8th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978)).

"Jury factfinding, unlike judicial factfinding, is not subject to direct attack as 'clearly erroneous.' In view of the Seventh Amendment's prohibition ('no fact tried by a jury shall be otherwise re-examined in any Court of the United States than according to the rules of the common law'), a jury verdict can only be set aside if the 'evidence [viewed] in the light most favorable to the plaintiff and * * * [the] facts and inferences reasonably drawn from the facts * * * lead to but one conclusion—that there is a total failure of evidence to prove the plaintiff's case.' *Fact Concerts, Inc. v. City of Newport*, 626 F.2d 1060, 1064 (1st Cir. 1980), vacated on other grounds, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)."

*Independence Tube Corp. v. Copperweld Corp.*, 691 F.2d 310, 319 (7th Cir.1982), *rev'd on other grounds*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984).

In his original complaint Ivey alleged violations of his Fifth, Sixth, Eighth and Fourteenth Amendment rights. The jury was presented with an elaborate set of interrogatories that covered due process claims, Fourth Amendment claims, and cruel and unusual punishment claims. The jury found that defendants did not violate Ivey's constitutional rights in placing him in pre-hearing detention after the March 1980 cigarette incident, in any part of a "copier" incident not involved in this appeal, or in any of the searches conducted by defendants. The jury did find that Defendant Barnett violated Ivey's due process rights during the hospital incident of January 1983 by placing him in pre-hearing detention and by failing to prepare a pre-hearing detention form containing specific reasons to support the detention; that with respect to the cigarette incident of March 1980, Defendants Hanley, Barnes, Hendricks, and Sowders failed to provide Ivey with hearings comporting with due process; and that Defendants Parker, Knight, Stewart, Hendricks, Sowders and Hanley violated the prohibition against cruel and unusual punishment in various ways.

## III

We first consider the finding of the jury on the cruel and unusual punishment question. The interrogatory read as follows:

"Did defendants subject plaintiff to verbal abuse, harrassment [sic] (including threats of discipline or write-ups), arbitrariness in dealing with him or his property, conditions of confinement, or unreasonable strip searches in violation of plaintiff's constitutional right against cruel and unusual punishment?"

The jury was given the following instruction on this issue:

"The final aspect of plaintiff's claim is that he was subjected to 'cruel and unusual punishment' because he was placed in prehearing detention, and because he was subjected to unconstitutional strip searches. Before the jury can determine whether the plaintiff was subjected to conditions that are 'cruel and unusual,' the jury must first find that the plaintiff was being punished. 'Punishment' may result from intentional actions taken by defendants to restrain plaintiff.

"If the jury finds from a preponderance of the evidence that plaintiff was punished, then it must determine whether the punishment imposed by the defendants was unnecessarily cruel punishment. The constitutional prohibition against cruel and unusual punishment prohibits sanctions, whether physical or psychological, which are disproportionate to the charged offense. If the jury finds from a preponderance of the evidence that the placement of plaintiff in prehearing detention at the Kentucky State Penitentiary were excessive or disproportionate in contrast to the charge against the plaintiff, then the punishment was 'cruel and unusual punishment.' However, defendants' imposition of confinement in segregation, without more, does not amount to cruel and unusual punishment.

"Plaintiff has a right under law not to be subjected to verbal abuse, harrassment [sic] (including threats of discipline or write-ups), or arbitrariness in dealing with inmates or their property, on the part of correctional personnel, which amounts to cruel and unusual punishment.

"If you find that the defendants violated this right, then you shall find for the plaintiff on this issue."

This instruction is grossly overinclusive. The prohibition against cruel and unusual punishment, as construed by the courts, is directed at two primary evils. From the earliest days of our jurisprudence, the prohibition has applied to "barbarous physical punishments." *Rhodes v. Chapman*, 452 U.S. 337, 345, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981). The Supreme Court has gone further along this line in recent years, so that "[t]oday the Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain'...." *Id.* at 346, 101 S.Ct. at 2399. The second type of Eighth Amendment claim that is cognizable concerns "sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983).

Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment. In *Rhodes*, for example, the Court found that the "double celling" of inmates in Ohio's Lucasville prison did not violate the Eighth Amendment. In *Hutto v. Finney*, 437 U.S. 678, 685, 98 S.Ct. 2565, 2570–71, 57 L.Ed.2d 522 (1978), on the other hand, the Supreme Court said:

"The Eighth Amendment's ban on inflicting cruel and unusual punishments, made applicable to the States by the Fourteenth Amendment, 'proscribe[s] more than physically barbarous punishments.' *Estelle v. Gamble*, 429 U.S. 97, 102 [97 S.Ct. 285, 290, 50 L.Ed.2d 251] [1976]. It prohibits penalties that are grossly disproportionate to the offense, *Weems v. United States*, 217 U.S. 349, 367 [30 S.Ct. 544, 549, 54 L.Ed. 793] [1910], as well as those that transgress today's ' "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." ' *Estelle v. Gamble*, [429 U.S. at 102, 97 S.Ct. at 290] quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (CA8 1968). Confinement in a prison or in an isolation cell is a form of punishment subject to

scrutiny under Eighth Amendment standards."

*Hutto* involved punitive isolation cells so overcrowded that they often had twice as many prisoners as beds. Because the occupants were violently antisocial, overcrowding led to persecution of the weaker prisoners. The outnumbered guards frequently resorted to violence to maintain order. Prisoners in isolation received less than half the necessary calories per day to sustain sedentary life, their meals consisting mainly of an unpalatable substance called "grue." The case at bar is much closer to *Rhodes*, obviously, than to *Hutto*.

In *Madyun v. Thompson*, 657 F.2d 868, 874 (7th Cir.1981), the Court of Appeals for the Seventh Circuit held that an allegation that "inmates are placed in disciplinary segregation 'for the least infraction of a prison rule ...'" stated a claim under the Eighth Amendment. But if "such systems of prison discipline as solitary confinement" fit easily within the definition of "punishment," *Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir.1973), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), many of the behaviors listed in the interrogatory in our case do not fit so easily and could hardly be termed "cruel" or "unusual" in any event. In *Johnson* Judge Friendly refused to categorize as "punishment" a spontaneous attack by a guard on a prisoner:

"The thread common to all these cases is that 'punishment' has been deliberately administered for a penal or disciplinary purpose, with the apparent authorization of high prison officials charged by the state with responsibility for care, control, and discipline of prisoners. In contrast, although a spontaneous attack by a guard is 'cruel' and, we hope, 'unusual,' it does not fit any ordinary concept of 'punishment.'"

*Johnson*, 481 F.2d at 1032.

■ If the beating in *Johnson* does not qualify as punishment, neither does the "verbal abuse" or "harassment" or "arbitrariness" covered by the jury instructions here. That does not end our inquiry, however, for the defendants failed to object to any part of the instructions at trial. Fed. R.Civ.P. 51 states that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict...." See also 9 C. Wright & A. Miller, *Federal Practice and Procedure*, §§ 2553, 2558. (Wright and Miller refer to a number of cases which hold that in this circumstance, the erroneous instructions become "the law of the case." *Id.* at § 2558 n. 36.) An exception to the rule may exist, nonetheless, where there is "plain error" in an instruction. See *id.* at § 2558. As this court observed in *Batesole v. Stratford*, 505 F.2d 804, 808 (6th Cir. 1974),

"the federal courts have recognized a narrow exception to the general prohibition of Rule 51 ... where the error was 'obvious and prejudicial' and required action by the reviewing court 'in the interests of justice.' *O'Brien v. Willys Motors, Inc.*, 385 F.2d 163 (6th Cir.1967); *McNello v. John B. Kelly, Inc.*, 283 F.2d 96 (3d Cir.1960)."

The error inherent in the instructions used here seems "obvious and prejudicial," and in the interest of justice we shall set aside the verdicts rendered under the cruel and unusual punishment instruction.

The reversal of a jury verdict due to erroneous jury instructions frequently necessitates a new trial. See *Houston v. Herring*, 562 F.2d 347 (5th Cir.1977). In this case, however, it seems to us, for the reasons that follow, that a new trial on the Eighth Amendment claims would be unwarranted.

■ The primary claim against Defendant Parker was that he caused Ivey to lose his legal aide position by charging him with having called a staff member a liar. It is well established, however, that no prisoner has a constitutional right to a particular job or to any job. Ivey also points to Parker's role in the January 22, 1983, incident when Ivey spent nearly two days in confinement in a hospital security cell and in segregation. Three days after Ivey had been released, an adjustment committee chaired by Parker found Ivey guilty on two charges

related to the incident. Parker's adjustment committee sentenced Ivey to fifteen days in segregation, but Ivey never served that sentence. As prison records show, and as Ivey himself testified, Warden Parker partially overruled the adjustment committee, and Ivey served none of the fifteen days. On these facts, Parker could not be found to have inflicted any cruel and unusual punishment on Mr. Ivey.

■ None of the alleged conduct of Defendant Sowders comes anywhere close to violating the Eighth Amendment. Sowders did uphold an adjustment committee disposition sentencing Ivey to six days in segregation regarding the March 1980 cigarette incident (time which Ivey had already served), but the jury found that the six days of prehearing detention was reasonable.

■ Defendants Hanley and Hendricks are in a situation similar to Sowders'. If some of the conduct attributed to them might conceivably have constituted a violation of the Due Process Clause, that conduct was dealt with separately by the jury. Both Hanley and Hendricks did allegedly play a part in the prehearing segregation connected with the March 1980 cigarette incident, but the jury found that it was reasonable for Ivey to be placed in prehearing segregation at that time. No Eighth Amendment violation can be attributed to Defendants Hanley and Hendricks.

■ Neither did Ivey establish any Eighth Amendment violations on the part of Defendant Knight. It will be recalled that Defendant Knight strip-searched Ivey on January 22, 1983, and filed an incident report against him for not having proper identification on his person and for "interfering with an officer." The jury found the search in question to be reasonable, and no segregation arose out of this incident. A sentence of fifteen days in segregation was voided by the warden. No Eighth Amendment violation can be attributed to Defendant Knight.

■ We next consider the Eighth Amendment claim against Officer Stewart, the man who took Ivey to the hospital security cell thinking he smelled alcohol on his breath. It is apparent that Stewart was not the person who ordered that Ivey be confined in the hospital security cell. Ivey himself testified that the person responsible for this was a Captain J.W. Travis. The evidence against Stewart showed only that he took Ivey to the hospital unit to be tested for intoxicants. There is nothing cruel or unusual in that, nor did the test for intoxicants constitute "punishment." Officer Stewart did not violate the Eighth Amendment.

## IV

### A

We next examine the verdict of the jury as to the due process claims. Those claims are dependent upon a showing that Mr. Ivey was deprived of life, liberty, or property. In *Bills v. Henderson*, 631 F.2d 1287, 1291 (6th Cir.1980), the court considered whether Tennessee state prisoners had a "protected liberty interest that require[d] certain due process standards be met prior to a transfer to administrative segregation." Citing *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976), the *Bills* court noted that the federal Constitution does not itself create such an interest. "A protected liberty entitlement can also be created by state law, however." *Bills*, 631 F.2d at 1291.

*Bills* offered the following explanation of the difference between cases where "liberty interests" were found to have been created under state law and cases where they were not:

"The demarcation between these two lines of cases is fairly clear. Where statutes or prison policy statements have limited prison officials' discretion by imposing a specific prerequisite to the forfeiture of benefits or favorable living conditions enjoyed by a prisoner, an expectation or entitlement has been created which cannot be taken away without affording the prisoner certain due process rights. On the other hand, when prison officials have complete discretion in making a decision that will affect the inmate,

no expectation or protected liberty interest has been created."

*Bills,* 631 F.2d at 1292–93. Under the Tennessee prison rules at issue in *Bills,* the court found that inmates had a "legitimate expectation" that they would not be placed in segregation absent a finding that the transfer was for the purposes set out in the rule. *Bills,* 631 F.2d at 1294. We see no basis for distinguishing the instant case from *Bills* in this respect, for the pertinent Kentucky prison regulation on "inmate rights" provides that

> "[a]n inmate is entitled to remain in his existing status until he meets the Adjustment Committee unless he constitutes a threat to the security of the Institution, safety of other inmates, staff or himself and therefore, in the opinion of the Shift Supervisor, requires pre-hearing detention."

KSP 100000–09(G)(1).

The district court's jury instructions characterized the effect of the Kentucky rule thus: "The plaintiff had a right not to be placed in pre-hearing detention unless he was a threat to the guards or other inmates or unless his detention was necessary to isolate plaintiff pending an investigation." That instruction is unexceptionable as far as it goes, but it ought to have made clear that the question was not whether the jury thought Mr. Ivey posed a threat, but whether the prison officials reasonably thought he did.

■ The district court went on to tell the jury that the following procedure would have to be observed before Mr. Ivey could be placed in segregation:

> "BEFORE HE COULD BE PLACED AND HELD IN SEGREGATION BY THE DEFENDANTS HE WAS ENTITLED TO A HEARING. THE HEARING HAD TO INCLUDE ALL OF THE FOLLOWING:
>
> 1. advanced written notice of the rule or infraction he is charged with;
> 2. a limited right to call witnesses on his own behalf;
> 3. an impartial panel which may contain members of the prison administration; and

> 4. a written statement by the fact finding panel as to the evidence relied on and reasons for the disciplinary action."

We are aware of no Sixth Circuit or Supreme Court precedent compelling the conclusion that the Constitution does in fact mandate such a hearing, but the defendants did not object to these instructions. The instructions were not so egregiously erroneous as to require that we set aside the verdict solely on the basis of instructional error in which the defendants acquiesced, and the finding of liability on the due process claims will be affirmed as to defendants Barnett, Hanley, Hendricks and Sowders.

■ We must reverse the jury finding that Defendant Barnes violated Ivey's due process rights. Barnes testified that he carried out orders to assign an officer to take Ivey to segregation following the cigarette incident. Barnes then served as the investigating officer who presented the case against Ivey to the adjustment committee. We cannot find anything in this that could possibly give rise to a due process violation.

**B**

■ The compensatory damage judgments rendered against Defendants Barnett, Hanley, Hendricks and Sowders came to $51 in the case of Barnett and $76 in the case of each of the other three. Those awards must be affirmed unless the defendants are entitled to prevail on qualified immunity grounds. The defendants raised the qualified immunity defense in a motion to dismiss that was considered by a United States Magistrate prior to trial. The magistrate recommended that the motion be denied. The defendants failed to file timely objections to the magistrate's report and recommendation, and the district court adopted it. Without expressing any view on the merits of the magistrate's conclusions, we hold that the failure to file timely objections resulted in a waiver of the qualified immunity defense. See *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88

L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).

## C

■ The award of punitive damages against these defendants cannot be justified on the record before us. In *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983), the Supreme Court held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." There has simply been no showing that such is the case here. With regard to the cigarette incident, there is no evidence that Hanley, Hendricks and Sowders were acting in bad faith or doing anything other than trying to ascertain whether or not Ivey was guilty of the charges brought against him. Although procedural irregularities may have occurred, the adjustment committee's findings were supported by some evidence. See *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). And although Captain Barnett may have been in error in assigning Ivey to pre-hearing segregation, prompt review by the prison warden resulted in Ivey's prompt release. The warden's statement releasing Ivey pointed out to Captain Barnett the reasons why pre-hearing detention was not appropriate. There is no indication that Captain Barnett harbored any ill will toward Ivey, or that Captain Barnett has been unwilling to learn from his errors.

## V

For the reasons stated above we REVERSE the award of compensatory and punitive damages for violations of Ivey's Eighth Amendment rights, REVERSE the award of compensatory and punitive damages against Defendant Barnes for violation of Ivey's due process rights, AFFIRM the award of compensatory damages against Defendants Barnett, Hanley, Hendricks and Sowders for due process viola-

tions, and REVERSE the award of punitive damages against those defendants.

CONTIE, Senior Circuit Judge, dissenting.

I dissent from that part of the majority's opinion which affirms the district court's judgment and award of compensatory damages against Hendricks based on the fourteenth amendment.

The award against Hendricks is based on the fact that Hendricks held some position in the chain of command which led to Ivey's pre-hearing detention with respect to the cigarette incident and subsequently participated as a member of the adjustment committee. Ivey also contends that the insufficiency of the evidence violates due process.

"[T]he requirement of impartiality mandates the disqualification of an official who is directly involved in the incident or is otherwise substantially involved in the incident but does not require the disqualification of someone tangentially involved." *Merritt v. De Los Santos,* 721 F.2d 598, 601 (7th Cir.1983); *see Jensen v. Satran,* 688 F.2d 76, 78 (8th Cir.1982), *cert. denied,* 460 U.S. 1007, 103 S.Ct. 1244, 75 L.Ed.2d 475 (1983). *Nothing* in the record indicates that Hendricks was directly or substantially involved in the cigarette incident. Hendricks filed no reports nor gave any testimony against Ivey. Accordingly, due process was not violated by Hendrick's service on the Adjustment Committee.

In *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985) (citation omitted), the Court held

that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board.... This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the

credibility of witnesses, or weighing of the evidence.

"Meager" evidence is sufficient, and direct evidence is not required. *Id.* at 457, 105 S.Ct. at 2775. Further, "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id.* In this case, the evidence indicated that Ivey came out of the protective custody unit with more cigarettes than he went in with, and that Ivey was admitted to the unit to fulfill his duties as a legal aide and not to transact personal business. The evidence is sufficient to meet the "some evidence" standard, and accordingly, the finding of guilty did not violate due process.

For these reasons, the judgment against Hendricks based on the fourteenth amendment should be reversed.