865 F.2d 1270
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James H. YOUNG, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant-Appellee.
 No. 87-1953.
 United States Court of Appeals, Sixth Circuit.
 Jan. 11, 1989.
 
 Before KEITH and KRUPANSKY, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant James H. Young appeals from the judgment entered in favor of the Secretary of Health and Human Services in this action seeking review of the Secretary's denial of disability benefits under section 205(g) of the Social Security Act, 42 U.S.C. Sec. 405(g). For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Claimant filed for disability insurance benefits on August 6, 1985, claiming an onset date of October 17, 1984 due to a back injury. His claim was denied initially and upon reconsideration. He requested a hearing which was held before an administrative law judge (ALJ) on April 24, 1986. The following evidence was introduced at the hearing.
 
 
 3
 Claimant was born on May 15, 1943. He has a ninth grade education. His relevant work experience was as a hot box operator and relief man at a Chevrolet plant from 1964 until October 17, 1984 when he left due to a back injury. Claimant gave the following testimony at his administrative hearing. He has a twenty year history of back pain which began when he had back surgery in 1964. He had a second operation in 1984. He took aspirin for pain, but did not take any prescription medication and had not participated in any physical therapy for his back. He uses a cane in case he lost control of his legs. He had not been hospitalized since his 1984 surgery. He described his pain as constant. He stated that his condition was aggravated by sitting in one position, and that the pain radiated down his legs with greater pain in his right leg. He testified that his daily activities have been severely limited since his surgery, and that he had to lie down for two and a half to three hours a day.
 
 
 4
 The following medical evidence was also introduced at the hearing. On October 14, 1984, Young injured his back while at work and was initially treated at Saginaw Hospital from October 18 to October 24, 1984. The discharge diagnosis was degenerative disc disease, possible herniated intervertebral disc in the lumbosacral spine, and acute back strain.
 
 
 5
 A few days later, on October 28, 1984, Young was admitted to St. Mary's Hospital. On October 31, 1984, after a lumbar myelogram showed an obstruction at the level of the L3-L4 disc space, Dr. George P. Schanz, performed back surgery on claimant. Upon discharge, Dr. Schanz diagnosed recurrent disc hernia at L3-L4, midline, with complete myelographic block (paraparesis).[1] Dr. Schanz prognosticated recovery within three to four months and opined that claimant could return to active work in three to five months.
 
 
 6
 On November 7, 1984, Dr. Schanz reported to C.A. Skowronski, M.D., that claimant's x-rays looked excellent postoperatively and that the postoperative course was satisfactory. Dr. Schanz reported that healing would take three to five months.
 
 
 7
 On April 8, 1985, an electromyographic examination revealed no denervation in the right leg. While the paraspinal muscles on the right showed denervation in L4-L5 segments, it could not be determined whether this was a residual finding or a new finding.
 
 
 8
 On April 24, 1985, an amipaque lumbar myelogram showed the old fusion at L3-L4 in good alignment without obvious complication or block. It also showed a complete block at L4-L5 probably due to herniation and extrusion of disc material.
 
 
 9
 Dr. Schanz's office notes from December, 1984 to July, 1985, indicated that claimant recovered well from the operation. Although claimant continued to complain of weakness in his right leg, Dr. Schanz reported that claimant had no clear radicular pain and that there was no acute symptomatology of nerve root compression. He also noted a two-centimeter atrophy of the right thigh muscle.
 
 
 10
 On June 19, 1985, Dr. Hugh L. Sulfridge evaluated claimant. Dr. Sulfridge's examination revealed that all reflexes were equal; that there appeared to be no atrophy of the calf muscles; and that claimant had overall control of his ankles. His final diagnosis was degenerative disc disease, lumbar-lumbosacral, with sciatica and pain in both lower extremities.
 
 
 11
 On September 10, 1985, Dr. A.O. Eckhouse performed an orthopedic evaluation of claimant's back. Dr. Eckhouse reported positive straight leg raising at 45 degrees, decreased (extensor hallucis longus) strength on the right of the long extensor muscle of the great toe, moderate spasm and tenderness in the paralumbarmusculature, difficulty in heel-toe walking due to pain, positive forward flexion at 45 degrees, rotation limited to 20 degrees and lateral flexion limited to 10 degrees. The patellar reflexes were equal bilaterally and achilles reflexes and gluteral tone were satisfactory. The Romberg and Trendelenburg tests (measuring muscular coordination and varicosity, respectively) were negative. Pinwheel testing revealed decreased sensation of the right lower extremity. Dr. Eckhouse diagnosed post-laminectomy fusion syndrome.
 
 
 12
 On February 27, 1986, Dr. Mark F. Rottenberg evaluated claimant. Dr. Rottenberg reported "poor voluntary effort on motor examination of the lower extremities with crepitus noted on right knee extension without evidence of knee effusion or instability." At this examination, claimant's straight leg raising test was positive on the right at 70 degrees and was negative on the left to 90 degrees. Dr. Rottenberg found no evidence of tenderness or spasm of the costovertebral angle.[2] Claimant could flex approximately 30 degrees but refused to attempt extension of the lower back. Claimant reported decreased pinprick sensation involving the entire right leg with normal pinprick examination on the left.
 
 
 13
 Dr. Rottenberg's impression was low back pain with two previous low back surgeries, leg pain with possible lumbosacral radiculopathy, and right knee patellofemoral arthritis. He speculated that appropriate management of claimant's condition might include additional surgery aimed at correcting the pathology identified on his 1985 myelogram. He also thought a nonsurgical pain management program would be beneficial.
 
 
 14
 Finally, John Caknipe, a vocational expert, testified at the hearing. He classified claimant's past work as unskilled with a light to medium exertional level. He testified that if claimant's testimony were taken as true, there were no jobs he could perform.
 
 
 15
 The ALJ posed a hypothetical that assumed the same age, education and work experience of claimant, with the medical factors set out in Dr. Eckhouse's report of September 10, 1985, including mild painful distress, moderate spasm, and limitations in range of motion. Caknipe testified that although such a person had a 30 to 50 percent loss in terms of torsal utilization, pain, and the need to use a cane, a person with those restrictions could perform a full range of unskilled sedentary work and 50 percent of the jobs in the light exertional range. He identified 190,000 unskilled sedentary jobs in the region (the lower two thirds of the lower peninsula of Michigan) and 20,000 in the local, five-city area. He also identified 400,000 unskilled jobs in the region at a limited range of light exertional activity that accommodated claimant's limitations.
 
 
 16
 The ALJ then added to the hypothetical the medical factors in Dr. Sulfridge's report of June, 1985, and in Dr. Rottenberg's report of February, 1986. Caknipe testified that these factors would not change his testimony.
 
 
 17
 Upon questioning by claimant's attorney, Caknipe testified that the fact that someone may have a complete block of L-3/L-4 did not necessarily affect vocational ability. A vocational expert would take into account the functional results of such a block, such as the evidence that claimant had forward flexion to 40 degrees and bending to 20 degrees with mildly painful motion.
 
 
 18
 On May 23, 1986, the ALJ issued his decision. The ALJ made the following relevant findings:
 
 
 19
 There is nothing in the evidence of record to indicate claimant has performed substantial gainful activity since October 17, 1984. Based upon the medical evidence of record, the undersigned finds claimant suffers from the severe impairment of post-laminectomy fusion syndrome, with residual limitations therefrom. However, based upon the aforesaid, the undersigned further finds this severe impairment does not meet or equal any of the Listing of Impairments.
 
 
 20
 Based upon the medical evidence of record, claimant's credible testimony, his daily activities, and his demeanor at the hearing, plus the testimony of the vocational expert, the undersigned finds that Mr. Young probably does not retain the residual functional capacity to perform his past relevant work as hot-box operator and relief man, because such job required frequent bending. However, based upon the aforesaid factors, the undersigned further finds Mr. Young does retain the residual functional capacity to perform the limited range of light unskilled jobs and a full range of sedentary unskilled jobs identified by the vocational expert, such as parking lot attendant, electronics inspector, electronics tester, electronics assembler, non-intervening security guard, and hand packager. These jobs exist in significant numbers, per the testimony of the vocational expert.
 
 
 21
 Decision of the Administrative Law Judge at 12-13 (May 23, 1986).
 
 
 22
 The decision became the final decision of the Secretary when the Appeals Council denied claimant's request for review on January 28, 1987. Claimant filed an action for judicial review in the district court. The matter was referred to a magistrate who recommended that the district court grant summary judgment for the Secretary. On September 21, 1987, the district court adopted the magistrate's recommendation. Claimant timely appeals. He argues that the ALJ erred in finding that he was not disabled due to pain, and that his impairment had not met the listings found at 20 C.F.R. Part 404, Subpt. P, App. 1.[3]
 
 II.
 
 23
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g), which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining this question, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 A.
 
 24
 Claimant argues that the ALJ erred in finding that he was not disabled. He argues that he was disabled by his nonexertional impairment of pain.
 
 
 25
 We review claimant's allegations of disabling pain under the following standard. Initially, there must be objective evidence of an underlying medical condition. If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986).[4]
 
 
 26
 The Secretary concedes that claimant has met the first prong of the Duncan test in that his post-laminectomy syndrome was documented by objective evidence. The Secretary contends, however, that claimant has failed to meet either part of the second prong of the test. We agree.
 
 
 27
 The ALJ's finding that claimant's complaints have not been substantiated by the clinical medical evidence or the observations of the physicians is tantamount to a finding that claimant did not meet this test.
 
 
 28
 There is substantial evidence to support a finding that there is not objective medical evidence confirming the severity of claimant's pain. Although claimant's examining physicians noted his subjective complaints of pain, none diagnosed his pain as disabling. Dr. Schanz, his treating physician, in his post-operative prognosis anticipated that claimant could return to work in three to five months. Dr. Schanz found that claimant did not have a clear radicular pain and there was no acute symptomology of nerve root compression. Also, while noting claimant's complaints of weakness, Dr. Schanz noted continued improvement in claimant's condition. Finally, Drs. Schanz and Sulfridge noted little or no atrophy of claimant's legs which objectively indicates a lack of significant motor loss. Objective medical data including x-rays, an electromyographic exam, and a myelogram, showed an "old fusion of L3-L4 in good alignment without complication or block," no denervation in the right leg, and minimal hypertrophic spurring.
 
 
 29
 There is also substantial evidence to support a finding that claimant's condition is not so severe that it could be reasonably expected to produce disabling pain. There was no evidence presented that showed that claimant's condition, post-laminectomy syndrome, was so severe as to reasonably result in disabling pain. As we observed above, while the examining physicians noted claimant's complaints, none diagnosed his condition as disabling. Furthermore, none of the objective medical evidence demonstrated that claimant's condition was so severe as to result in disabling pain. Finally, we note that although surgery was recommended by Dr. Schanz and Dr. Rottenberg the decision was left up to claimant and no surgery was performed.
 
 
 30
 Accordingly, we hold that the ALJ's finding relative to claimant's subjective complaints of disabling pain is supported by substantial evidence.
 
 
 31
 Claimant also argues that in disregarding his testimony concerning his condition, the ALJ improperly resorted to the "prohibited sit and squirm test." See Weaver v. Secretary of Health and Human Servs., 722 F.2d 310, 312 (6th Cir.1983). We find this argument to be without merit. This argument apparently arised from the following portion of the ALJ's decision: "Claimant's demeanor at the hearing did not substantiate his allegations of total and permanent disability...." In making this argument, he relies on Harris v. Heckler, 756 F.2d 431 (6th Cir.1985), in which this court held that "if there is uncontroverted evidence in the record which clearly corroborates a claimant's assertions of pain, it would be wrong for the ALJ to reject [the claimant's assertions] simply because of the claimant's demeanor." Id. at 436. Claimant does not point to nor does this court find uncontroverted evidence which clearly corroborates claimant's testimony. Furthermore, as we held above, the ALJ's finding concerning claimant's subjective complaints is supported by substantial evidence, notwithstanding his observations concerning claimant's demeanor.
 
 B.
 
 32
 Finally, claimant argues in his reply brief that the Secretary erred in finding that he did not have an impairment or combination of impairments listed in Part 404, Subpart P, Appendix 1. Specifically, he argues that his impairment meets the requirements of section 1.05C.
 
 
 33
 Claimant did not raise this issue in his objections to the report and recommendation of the magistrate. By failing to object to the magistrate's recommendation concerning this issue, claimant has waived his right to appeal the district court's determination that the ALJ's finding that claimant's impairment did not meet the Listings is supported by substantial evidence. See Ivey v. Wilson, 832 F.2d 950, 957 (6th Cir.1987) (per curiam); United States v. Walters, 638 F.2d 947, 950 (6th Cir.1981); Thomas v. Arn, 474 U.S. 140 (1985).
 
 
 34
 Even if claimant had not waived this argument, he would not have prevailed on this issue since we believe the ALJ's finding concerning the Listing is supported by substantial evidence.
 
 Section 1.05C reads as follows:
 
 35
 C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 
 
 36
 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 37
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.
 
 
 38
 20 C.F.R. Part 404, Subpt. P, App. 1, Sec. 1.05C.
 
 
 39
 Initially, we note that the requirements of section 1.05C are presented in the conjunctive, and that the medical evidence must show that all of the requirements are met in order to find that the claimant has a listed impairment under this section. Dr. Sulfridge in his evaluation of the claimant on June 19, 1985, noted that "[t]here appears to be no atrophy by measurement of the calf muscles." Also, in his office notes, Dr. Schanz noted only a 2 cm. atrophy of the right thigh. This evidence supports a finding that claimant does not have significant motor loss with muscle weakness as required by section 1.05C 2. See Land v. Secretary of Health and Human Servs., 814 F.2d 241, 244 (6th Cir.1986) (per curiam) (lack of atrophy demonstrating that claimant did not have muscle weakness deomonstrates that claimant's condition did not meet the criteria of section 105C).
 
 
 40
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Paraparesis is "a partial paralysis, especially of the lower extremities." Dorland's Illustrated Medical Dictionary 1135 (25th ed. 1974)
 
 
 [2]
 The costovertebral angle is "the angle formed on either side of the rib and the lumbar vertebra." Dorland's at 367
 
 
 [3]
 Claimant's argument concerning the ALJ's use of the "grid", 20 C.F.R. Part 404, Subpt. P, App. 2, is totally without merit, since the ALJ did not rely on the "grid" alone to make his determination, but rather used the services of a vocational expert to find that claimant has the residual functional capacity to perform the full range of sedentary unskilled jobs identified by the expert
 
 
 [4]
 This court has recently held that the Duncan standard is applicable to cases decided after January 1, 1987, the sunset of the Social Security Disability Reform Act of 1984. McCormick v. Secretary of Health and Human Servs., No. 87-1828, slip op. at 10 (6th Cir. November 25, 1988)