**VENTURE FUNDING, LTD., a Michigan Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. Civ. 97–CV–75476–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 29, 1999.

Robert J. Zinkel, Jr., Birmingham, MI, for plaintiff.

Stephen T. Lyons, Tax Division, U.S. Dept. of Justice, Washington, DC, for defendant.

### OPINION

DUGGAN, District Judge.

On October 30, 1997, plaintiff Venture Funding, Ltd., filed a complaint against the United States challenging the Internal Revenue Service's denial of certain income tax deductions claimed by plaintiff on its 1991 income tax return. Resolution of the underlying cause of action, however, has been plagued by repeated discovery disputes.

### Background

On March 1, 1991, plaintiff acquired specialized biomedical equipment, which was later transferred to AM Diagnostics under a leaseback arrangement.[1] After AM Diagnostics failed financially, its secured creditors

---

1. Plaintiff acquired a loan to purchase the equipment from Phoenix Leasing, Inc. Plaintiff then entered a leaseback agreement with AM Diagnostics, under which title to the equipment was vested in plaintiff and the loan proceeds were transferred to AM Diagnostics. (Compl. at ¶ 9). Venture then assigned its right to the lease payments to Phoenix. (*Id.* at ¶ 10).

took over and allegedly converted the leased equipment for their own use and disposition. Various lawsuits concerning plaintiff's financial liability for the equipment were filed in California, Texas, Michigan, and Indiana.[2] (Compl. at ¶ 18). Plaintiff filed various counterclaims in a number of those lawsuits. (*Id.*).

As a result of the alleged conversion, plaintiff claimed a theft/casualty loss tax deduction on its 1991 income tax return. (*Id.*, Ex. A, at 3 & 5). The IRS, however, relying upon the fact that plaintiff had filed various counterclaims, denied the deductions and resulting refunds. (*Id.* at ¶ 19). Thereafter, plaintiff filed the instant cause of action challenging the IRS's decision.

*The July 10, 1998 Stipulation and Order*

On April 10, 1998, defendant filed its first set of interrogatories, which included one particular request that has sparked continued controversy:

8. With respect to each lawsuit in which the taxpayer was a party that in any way related to the purchase, sale and/or leasing of the equipment, state the following:

\*\*\*

h. The identity of all documents that show the exact amount expended by the taxpayer on each case, including the identity of all documents that in any way show the amount expended for attorney's fees.

i. The identity of the contents of all correspondence, memoranda and other written documents between the taxpayer (including its officers, directors, managing agents and shareholders) and its attorneys that in any way relate to the merits of each such

case, including any discussion of the chances of the taxpayer prevailing, whether it be as a defendant or as a counterclaim plaintiff.

(Pl.'s Br. in Supp. of Mot. for Recons. at 1–2). Plaintiff, however, failed to respond and defendant filed a motion to compel on June 15, 1998. On July 10, 1998, this Court entered a "Stipulation and Order Regarding Discovery and Scheduling Dates," in which plaintiff agreed "not to object to the [d]efendant's discovery requests" and to comply on or before August 1, 1998. (July 10, 1998 Stipulation & Order at 2).

On August 5, 1998, plaintiff filed answers to defendant's interrogatories and indicated that the requested documents were available for review at the office of plaintiff's California counsel, Marc S. Mazer, Esq., in San Francisco, California.

*The October 23, 1998 Order*

On September 28, 1998, defendant filed its first motion to dismiss pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) alleging that plaintiff violated the Court's July 10, 1998 Stipulation and Order because the documents made available for inspection in California did not contain all of the material requested by interrogatory 8(i).[3] (Def.'s Sept. 29, 1998 Br. in Supp. of Mot. to Dismiss at 3–4). In the alternative, defendant requested that the Court prohibit plaintiff "from introducing any evidence that it had no reasonable prospect of recovery of any alleged theft loss in 1991." (*Id.* at 1).

In its reply, plaintiff acknowledged that its California counsel had refused to release the necessary documents to answer interrogatory 8(i), but stated that the documents would be shipped to Detroit and made available to defendant's counsel. (Pl.'s Oct. 6, 1998 Reply

---

**2.** In its answer to defendant's interrogatories, plaintiff listed four lawsuits concerning the leased equipment: *Phoenix Leasing, Inc. v. Venture Funding, Ltd.*, No. C91 4092 DLJ, 1994 WL 449036 (N.D.Cal.); *In re Rupp & Bowman Co.*, 109 F.3d 237, No. 394–33815–SAF–11 (Bankr. N.D.Tex.); *Indiana Dev. Fin. Auth. v. Venture Funding, Ltd.*, No. 91–424617–CK (Oakland County Cir.Ct.Mich.); *Indiana Dev. Fin. Auth. v. AM Diagnostics, Inc.*, No. 49D07–9112–CP–1384 (Marion County Super.Ct.Ind.). *See also* Def.'s Sept. 29, 1999 Mot. to Dismiss, Ex. B.

**3.** Rule 37 states that the court in which a matter is pending may make such orders in regard to a party's failure to obey a discovery order "as are just, and among others ... [a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, *or dismissing the action or proceeding or any part thereof,* or rendering a judgment by default against the disobedient party." Fed.R.Civ.P. 37(b)(2)(C) (emphasis added).

at 2–3). In an Order dated October 23, 1998, this Court ordered that "[a]ll documents not subject to a protective order that have been requested by the United States" be produced in Detroit, Michigan, and made available to defendant for inspection and copying by November 3, 1998. (Oct. 23, 1998 Order at ¶ 1). In its October 23, 1998 Order, this Court specifically stated that "[i]n the event the plaintiff fails to fully and completely comply with either paragraphs 1 or 2 of this ORDER, the plaintiff's complaint shall be dismissed with prejudice." (*Id.* at ¶ 3).

*The May 20, 1999 Order*

On November 25, 1998, defendant filed its second motion to dismiss pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) alleging that plaintiff failed to comply with the Court's October 23, 1998 Order. According to defendant, plaintiff had failed to provide the correspondence and fee bills requested by interrogatory 8(h). (Def.'s Nov. 25, 1998 Br. in Supp. of Mot. to Dismiss at 4–5).

In its response, plaintiff asserted that its compliance with defendant's discovery request was "substantial, complete, and thorough," and that "the type of materials that [defendant] seeks to obtain do not exist." (Pl.'s Jan. 6, 1999 Resp. at 5). The Court referred the matter to Magistrate Judge Steven D. Pepe.

On February 26, 1999, Magistrate Judge Pepe issued a Report and Recommendation ("R & R") recommending that the Court deny defendant's motion to dismiss, but award defendant reasonable expenses in the amount of $19,587.41 resulting from plaintiff's continued failure to comply with discovery orders. This Court rejected both plaintiff's and defendant's objections to the R & R, and in an Opinion and Order dated May 20, 1999, denied defendant's motion to dismiss and ordered plaintiff to pay defendant $19,587.41 in expenses. The Court also ordered "that plaintiff provide on or before June 15, 1999, full and complete answers to Interrogatories 8h and 8i, or an appropriate

affidavit or declaration that no such documents exist." (May 20, 1999 Order at 1–2).

On June 7, 1999, plaintiff filed a motion for reconsideration, asking this Court to reconsider its May 20, 1999 Order relating to the imposition of sanctions. On July 21, 1999, defendant filed a response to plaintiff's motion.

On August 25, 1999, defendant filed a third motion to dismiss, contending that plaintiff's complaint should be dismissed because "plaintiff has once again willfully ignored an Order of this Court." (Def.'s Aug. 25, 1999 Br. in Supp. of Mot. to Dismiss at 6).

On November 4, 1999, this Court heard oral arguments on both motions.

### *Plaintiff's Motion For Reconsideration*

Plaintiff has filed a motion pursuant to Federal Rules of Civil Procedure 59 and 60 for reconsideration of the Court's May 20, 1999 Order requiring plaintiff to pay defendant $19,587.41 in discovery expenses.[4] To succeed on a motion for reconsideration, "[t]he movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case." E.D.Mich.L.R. 7.1(g)(3); *see also Hence v. Smith*, 49 F.Supp.2d 547, 550–51 (E.D.Mich.1999). "A motion for reconsideration which merely presents 'the same issues ruled upon by the Court, either expressly or by reasonable implication,' shall be denied." *Hence*, 49 F.Supp.2d at 551 (quoting E.D.Mich.L.R. 7.1(g)(3)).

*Imposition of Sanctions Was Not Inappropriate*

Plaintiff raises three arguments in support of its motion for reconsideration. First, plaintiff argues that the imposition of sanctions was inappropriate because plaintiff "has genuinely and honestly attempted to supply the documents described in Interrogatories 8(h) and 8(i)." (Pl.'s Br. in Supp. of Mot. for Recons. at 6). Plaintiff further asserts that

---

**4.** Plaintiff does not specify which sections of Rule 59 and Rule 60 it relies upon in support of its motion for reconsideration. Therefore, the Court will treat plaintiff's motion for reconsideration as a motion for reconsideration pursuant to

Local Rule 7.1(g). *See Hence v. Smith*, 49 F.Supp.2d 547, 550 (E.D.Mich.1999) (treating motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) as a motion for reconsideration under Local Rule 7.1(g)).

"[b]ecause there has been no true or real showing of bad faith by [p]laintiff other than [d]efendant's inaccurate and unsupported allegations, it is inappropriate to issue sanctions pursuant to Fed.R.Civ.P. 37." (*Id.* at 8).

Plaintiff, however, raises no new issues in support of its argument. Once again, plaintiff asserts that the parties agreed that less than Mazer's complete files were required to fulfill the discovery request and, therefore, only a limited waiver of the attorney-client privilege resulted. (*Id.* at 6–7). This Court, however, rejected the same assertion in its May 20, 1999 Order, stating that Federal Rule of Civil Procedure 29 required any such limited waiver to be in writing and that any objection concerning the attorney-client privilege made after thirty days from service of the interrogatories was waived, citing Federal Rule of Civil Procedure 33. (May 20, 1999 Op. at 6).

Plaintiff further asserts that this Court relied upon inaccurate information that defendant was "completely denied access to documents in Mr. Mazer's office and received 'none' of the requested attorney/client correspondence when it was produced in Detroit." (Pl.'s Br. in Supp. of Mot. for Recons. at 7). The Court, however, did not state that defendant received "none" of the requested information. The Court stated only that the information supplied by Mazer did not satisfy the discovery request because it focused solely upon Mazer's involvement with the instant cause of action, ignoring the other four lawsuits involving plaintiff's rights *vis a vis* the allegedly converted equipment.[5] (May 20, 1999 Op. at 7–8). Therefore, plaintiff had failed to answer interrogatories 8(h) and 8(i), which requested information regarding "*each* lawsuit in which the taxpayer was a party that *in any way* related to the purchase, sale and/or leasing of the equipment." (*Id.* at 2) (emphasis added).

Lastly, plaintiff asserts that imposition of sanctions was inappropriate because there has been no showing of bad faith on its behalf. Federal Rule of Civil Procedure 37, however, does not require a showing of bad faith. Rule 37 provides that if a party "fails to obey an order to provide or permit discovery" the Court "may make such orders in regard to the failure as are just." Fed. R.Civ.P. 37(b)(2). Rule 37 further states that "the court *shall* require the party failing to obey the order ... to pay the reasonable expenses, including attorneys fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." *Id.* (emphasis added).

Plaintiff does not argue that its failure to obey the Court's Order was substantially justified or that the award of expenses was unjust. Furthermore, plaintiff has cited no authority for its proposition that a showing of bad faith is required before a court can impose sanctions in the form of expenses under Rule 37, nor has the Court discovered such authority.[6] Therefore, the Court does not find that its award of expenses pursuant to Rule 37 was inappropriate given plaintiff's continued failure to comply with the Court's discovery orders.

*Plaintiff's Claim That Sanctions Were Excessive Is Procedurally Barred*

Next, plaintiff argues that the expenses granted to defendant by this Court's May 20, 1999 Order were excessive. Plaintiff, however, failed to raise this argument in its objections to Magistrate Judge Pepe's R & R and is, therefore, barred from asserting the argument in its motion for reconsideration. Any objections to the R & R must be filed within ten days of its service. 28 U.S.C. § 636(b)(1); E.D.Mich.L.R. 72.1(d)(2). Failure to file objections within the requisite time period constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Ivey v. Wilson*, 832 F.2d 950 (6th Cir.1987). Plaintiff cannot escape the ten day requirement simply by phrasing its ob-

---

5. *See supra* note 2.

6. A showing of bad faith or willfulness, however, is required before a court may impose the ultimate sanction of dismissal under Rule 37. *See*

*Harmon v. CSX Transp., Inc.*, 110 F.3d 364 (6th Cir.1997); *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150 (6th Cir.1988).

jection in terms of a motion for reconsideration. To hold otherwise would allow parties to escape the mandates of § 636 and Local Rule 72.1 simply by creatively renaming their objections as motions for reconsideration.

*Plaintiff Has Failed To Demonstrate How An Award of Sanctions Would Undermine Its Ability to Prosecute Its Case*

Lastly, plaintiff asks this Court to hold the award of sanctions in abeyance until the conclusion of the case because "[a]n interim award of sanctions would so incredibly undermine [p]laintiff's ability to prosecute its case." (Pl.'s Br. in Supp. of Mot. for Recons. at 9). Plaintiff, however, has failed to provide any evidence regarding exactly how or why its ability to prosecute its case will be undermined if the Court does not hold the award of sanctions in abeyance. Moreover, this argument carries little weight considering that plaintiff has already deposited the required funds with the Court.[7]

Accordingly, plaintiff's motion for reconsideration shall be denied.

### Defendant's Motion to Dismiss

At oral argument on November 4, 1999, the Court questioned plaintiff's counsel extensively with regard to defendant's claim that plaintiff had failed to comply with the Court's May 20, 1999 Order. During oral argument, the Court specifically expressed its concern that plaintiff had not provided, on or before June 15, 1999, answers to interrogatories 8h and 8i, or an appropriate affidavit that no such documents existed.[8] Asserting that plaintiff had not "willfully ignored" the Court's May 20, 1999 Order, counsel for plaintiff stated his belief that the information requested in interrogatories 8h and 8i, to the extent that such information was in the possession or under the control of plaintiff, had been furnished to defendant.

Counsel for plaintiff further argued that an affidavit was submitted as required by the Court's May 20, 1999 Order with respect to the "non-existence" of any other documents. According to plaintiff's counsel, plaintiff submitted the affidavit of Eugene Schuster, president of Venture Funding, on June 15, 1999, which explicitly stated: "There are no other documents in existence beyond those produced to Mr. Lyons that are covered by interrogatories 8(h) and 8(i)."

The Court, however, indicated that the affidavit appeared to have never been signed by Schuster, noting that its office copy did not reflect the signature of Schuster.[9] Defense counsel also stated that he had not seen a signed copy of the June 15, 1999 affidavit, and, most importantly, counsel for plaintiff acknowledged that he did not have a signed copy in his possession. The Court was also concerned that plaintiff did not file its response to defendant's motion to dismiss, which contained a "supplemental affidavit" signed by Schuster and containing significantly more information than the original June 15, 1999 affidavit, until November 3, 1999, one day before the scheduled hearing.

Consequently, the Court indicated, on the record, that it was granting defendant's motion to dismiss because the Court did not believe that plaintiff had complied with the Court's May 20, 1999 Order. In making its ruling, the Court was not so much concerned that plaintiff had failed to produce documents in its possession or under its control. Instead, the Court was concerned that plaintiff had failed to file an "appropriate affidavit" asserting that it had produced all documents in its possession or under its control, or explaining, in some detail, why other documents that were potentially covered by the pertinent interrogatories could not be pro-

---

7. Plaintiff deposited the required funds with the Court on June 15, 1999.

8. In its August 25, 1999 motion to dismiss, defendant asserted that Schuster's June 15, 1999 affidavit was "not the 'appropriate' affidavit required by the Court's Order of May 20, 1999." (Def.'s Br. in Supp. of Mot. to Dismiss at 5). According to defendant, documents, such as billing records from the other four cases cited by

plaintiff, potentially existed but had not yet been produced or properly declared to be non-existent. (*Id.* at 5–6).

9. All pleadings filed with the Clerk's Office must be filed in duplicate with the original being retained in the file in the Clerk's Office and the second copy being forwarded to the judge for his or her "office file."

duced. In particular, the Court was not convinced that plaintiff had filed a *signed* affidavit by June 15, 1999.

Subsequent to the hearing, however, an examination of the court file revealed that the June 15, 1999 affidavit had in fact been signed by Schuster. Therefore, the Court's decision to dismiss this case was based on incorrect information, i.e., that the June 15, 1999 affidavit had never been signed by Schuster. Because the Court's original decision was mainly based on information that has proven incorrect, the Court must now re-evaluate defendant's motion to dismiss.

■■■ In determining whether to dismiss a case pursuant to Rule 37(b)(2)(C), this Court must consider four factors: (1) whether the party's failure to cooperate was due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Bass v. Jostens, Inc.*, 71 F.3d 237 (6th Cir.1995). Evaluating defendant's motion to dismiss in light of these four factors, the Court is now convinced that defendant's motion to dismiss should be denied.

First, defendant has failed to establish that plaintiff acted with bad faith or willful disobedience in regard to the May 20, 1999 Order. *See Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir.1997) (requiring "contumacious" conduct). Furthermore, although Schuster's June 15, 1999 affidavit should have provided more information than it did, the Court is not convinced that its "deficiencies" rise to the level of "willful disobedience."

Second, the Court is not convinced that plaintiff has deliberately withheld "crucial" or "important" documents. While counsel for defendant believes that there are other documents that plaintiff should have produced, or should have caused to be produced, this Court is not convinced that defendant has been prejudiced by plaintiff's failure to

produce those documents, or that plaintiffs failure to produce those documents, as of this time, is such a willful and deliberate violation of this Court's May 20, 1999 Order that dismissal is warranted. While this Court believes that it may be possible for plaintiff to cause the production of, or assist in the production of, other documents, this Court does not believe that plaintiff's failure to do that which defendant believes should have been done to cause production of those records is sufficient to warrant dismissal.

With respect to plaintiff's obligation to file an "appropriate affidavit," this Court acknowledges that Schuster's June 15, 1999 affidavit "leaves much to be desired." Plaintiff obviously recognized as much when it filed Schuster's "supplemental affidavit" on November 3, 1999. However, based on the statements made by plaintiff's counsel at oral argument on November 4, 1999, the Court is satisfied that counsel made some effort to comply with the Court's Order of May 20, 1999.

Although plaintiff was warned that its failure to cooperate would result in dismissal, this Court believes that the first two factors weigh against dismissal at this time. The Court, however, does believe that plaintiff's conduct warrants further monetary sanctions. Had plaintiff filed an affidavit containing the information in Schuster's "supplemental affidavit" on June 15, 1999, defendant may not have filed a third motion to dismiss. At the very least, the Court would have had more information with which to address defendant's motion to dismiss. The Court does not understand why, when facing a motion to dismiss filed on August 25, 1999, plaintiff waited until November 3, 1999, the day before the hearing, to file a response and "supplemental affidavit." Defense counsel was justifiably perturbed that he did not receive the response or the "supplemental affidavit" until the day before the hearing. Furthermore, in this Court's opinion, the "reasons" offered by plaintiff's counsel for not filing the response and supplemental affidavit earlier do not justify the delay.[10]

10. At oral argument, counsel for plaintiff stated that he had failed to file a response earlier be-

cause he was on vacation the week of August 25, 1999, and then in trial during September 1999,

Therefore, the Court shall order plaintiff to pay to defendant the sum of $5,000 on or before December 10, 1999. This sanction is imposed in lieu of dismissal of the case and is an amount that this Court believes is fair and reasonable to deter plaintiff from any further dilatory conduct or "lack of cooperation."

Failure to pay such sum of $5,000 to defendant by December 10, 1999, shall subject plaintiff to dismissal of this action.[11]

An Order consistent with this Opinion shall issue forthwith.

during which time defendant's motion to dismiss, as well as this Court's notice regarding the scheduled hearing date, "got buried in the mail."

11. Plaintiff is hereby on notice that the filing of another "motion for reconsideration" will not relieve its obligation to pay defendant the sum of $5,000. No motion for reconsideration will be considered by this Court unless plaintiff accompanies such motion with an affidavit verifying that the sum of $5,000 has been paid to the Clerk of the Court.