**CITY OF LOUISVILLE, Appellant,**

v.

**Marsha L. PADGETT, etc., Appellees.**

Court of Appeals of Kentucky.

June 19, 1970.

**486**

Eugene H. Alvey, Director of Law, William A. Stephenson, Asst. Director of Law, Louisville, for appellant City of Louisville.

C. M. Leibson, J. J. McCarthy, Louisville, for appellee and cross-appellant Marsha L. Padgett.

Wayne J. Carroll, Victor W. Ewen, Ernest H. Clark, Louisville, for appellee and cross-appellee Ruby Construction Co.

Carl L. Wedekind, Jr., Stites & McElwain, Louisville, for appellee, cross-appellant and cross-appellee Louisville and Jefferson County Metropolitan Sewer District.

EDWARD P. HILL, JR., Chief Justice.

In her original and amended complaints, Marsha L. Padgett sued the City of Louisville (the City), Ruby Construction Company (Ruby), Louisville and Jefferson County Metropolitan Sewer District (Metropolitan), and Perry M. Adams for damages for injuries sustained when the automobile in which she was riding as a passenger and which was being operated by Perry M. Adams ran into a pool of water on River Road and wrecked. She alleged negligence on the part of the City, Ruby, and Metropolitan in the construction and maintenance of the drainage system of the road in question.

The City filed cross-claim against Ruby for indemnity. It also filed cross-claim against Adams for indemnity or contribution.

The City also filed cross-claim for indemnity against Metropolitan, claiming that under KRS Chapter 76 Metropolitan had the sole responsibility for the drainage of the streets of the City, including River Road at the place of the accident, and that if there was liability anywhere it was on Metropolitan. In the alternative the City asked for contribution against Metropolitan.

Metropolitan filed cross-claim against the City, Ruby, and Adams.

At the conclusion of plaintiff's case, the circuit court sustained Ruby's motion for a directed verdict.

At the close of the entire case, the circuit court sustained Metropolitan's motion for a directed verdict and overruled plaintiff's motion for a directed verdict as to the City and Adams.

The jury returned a joint verdict against the City and Adams for $28,357.86. Later a separate judgment was entered in favor of the City against Adams for $14,178.93. Adams and his insurance carrier paid into court $10,000 (its limit of liability). This amount was accepted by plaintiff in full satisfaction of her claim against Adams under a previous agreement that Adams, then in Korea, would not demand a continuance providing plaintiff would not claim from Adams a greater amount than the limit of liability under his insurance policy. All of this was with court approval.

The City has appealed. Plaintiff filed cross-appeal against Ruby and Metropolitan. Metropolitan cross-appeals from that part of the judgment which dismissed its cross-claim against Ruby.

The facts are as follows. On November 5, 1966, at about 7:14 p. m., the car in which appellee Marsha L. Padgett was a passenger and which was being driven

eastwardly on River Road in the City of Louisville by Perry Morrison Adams, after rounding a slight curve, ran into a pond or accumulation of water. The splashing water covered the windshield blinding the driver, causing him to lose control of the car. The car left the road and struck a utility pole causing serious injuries to appellee Marsha L. Padgett. The pond of water was about 200 feet long and ranged in depth up to six inches next to the curb. It was dark at the time.

Four or five days prior to the accident, an officer of the Louisville Police Department observed the accumulation of water at the place of the accident and telephoned a report thereof to police headquarters. He told the "complaint desk" something should be done to the puddle, that it was in the lane of traffic.

During or prior to 1965, Ruby contracted with the State Highway Department to construct a portion of I–64, known as Riverside Expressway, from east of the interchange at the North-South Expressway to near Washington Street.

On November 3, 1966, a city policeman notified Metropolitan of the flooding on River Road. Metropolitan placed barricades about the place and pumped the water off. On November 7, 1966, Metropolitan notified the State Highway Department of the flooding of the road, but this was after the accident. Ruby used a backhoe to dig a temporary ditch which stopped the flooding. Only one or two hours was required to do this.

On this appeal the City presents these three arguments: "(1) The negligence of the appellant, City of Louisville, if any there was, was not the proximate cause of appellee Padgett's injuries, but the independent intervening negligence of the defendant, Perry Adams, was the sole proximate cause of appellee's injuries as a matter of law; (2) appellant was, as a matter of law, entitled to judgment for indemnity on its cross-claim against Ruby, or at least

a jury issue was raised on said cross-claim"; and "(3) appellant was, as a matter of law, entitled to judgment for indemnity, or in the alternative, contribution, on its cross-claim against Metropolitan Sewer District, or at least a jury issue was raised on said cross-claim."

Turning to the City's first argument, the City contends that appellee Padgett is bound under rules pertaining to judicial admissions by her notice of the accident given to the City under KRS 411.110. The City reasons that Adams, the driver, had from 321 to 375 feet after discovering the water in which to "attempt to stop the auto," apply his brakes, or turn on his windshield wipers. By all the evidence, Adams was not traveling at an excessive speed. He stated he was traveling at about 30 miles per hour. There was no evidence of drinking. Street lighting in the vicinity of the water was not good. At least two of the investigating officers used flashlights at the scene of the wreck. We have some reservations as to whether Adams was guilty of negligence, but the jury found that he was. He or his insurance carrier has satisfied the judgment, and neither has cross-appealed. So that question is not before us unless it can be said that Adams' negligence was the sole cause of the accident, and that we certainly cannot say. The City had notice of the condition from observations of two of its police officials and actually caused Metropolitan to pump the water off the road once before the accident. We think, as did the jury, that the City was guilty of negligence by failing to keep the water from accumulating or by failing to place barricades up to notify the public of the obvious hazard.

■ Taking Padgett's notice to the City as true, it does not admit negligence on the part of Adams and did not amount to a judicial admission.

■ We agree with the jury that Adams' negligence was not the sole or primary cause of the accident.

The negligence of Adams must have been the "primary and active" cause of the accident in order for the City to be entitled to indemnity. See Ambrosius Industries v. Adams, Ky., 293 S.W.2d 230; Mackey v. Allen, Ky., 396 S.W.2d 55; and Seelbach v. Cadick, Ky., 405 S.W.2d 745.

We do not find the cases cited by the City to have similar factual situations.

We next discuss the City's position that it is entitled to indemnity against Ruby on its cross-claim or "at least" that a jury issue was raised. The City cites a number of cases, some of which are reverse condemnation cases in which the court decided that the governmental agancy (the State) was liable. This is not such a case.

Ordinarily one contracting with the sovereign Commonwealth of Kentucky who performs his contract in conformity with the plans and specifications of the contract will not be held liable for injury to the public in the absence of a negligent (Hunt-Forbes Const. Co. v. Robinson, 227 Ky. 138, 12 S.W.2d 303 (1928), and Taylor v. Westerfield, 233 Ky. 619, 26 S.W.2d 557 (1930)) or a wilful tortious act or he is engaged in an ultra-hazardous activity such as blasting, which is treated as trespass. (Hall v. Ellis & Brantley, 238 Ky. 114, 36 S.W.2d 850 (1931).) For cases exempting one contracting with the State, the following may be cited: Combs v. Codell Const. Co., 244 Ky. 772, 52 S.W.2d 719 (1932); H. H. Miller Const. Co. v. Collins, 269 Ky. 670, 108 S.W.2d 663 (1937); and Ernst v. General Refractories Co., 6 Cir., 202 F.2d 485.

A reading of our opinions since Hunt-Forbes, supra, was decided shows some tendency to liberalize the rule so as to enlarge the liability of public contractors. Be that as it may, we start with the hypothesis that Ruby is not chargeable with negligence in the present case if it made the change in the slope strictly in conformity with the verbal specifications of the Department of Highways. Wood v. Foster & Creighton Co., 191 Tenn. 478, 235 S.W.2d 1 (1950). But the question is, Did Ruby do so? If it did, the trial court was correct in directing a verdict for Ruby.

Perhaps it is necessary at this point to give the reader an in-depth explanation of the facts surrounding the construction work performed by Ruby near the site of the accident. As mentioned earlier, Ruby was the contractor on a portion of the Riverside Expressway. The plans for the expressway called for the roadbed to be elevated approximately twenty feet above ground level. Thus, it was necessary for the contractor to construct an embankment to the required height. According to the evidence, Ruby followed the original plans and constructed the embankment to the proper height as well as sloping the sides to the proper degree of slope. However, soon after this stage of the work was completed it became apparent to the highway department's resident engineer that some minor revision of the plans and specifications was necessary since water had begun to pond against the base of the slope on the north side of the expressway. Officials of the highway department then decided more fill dirt was needed at the base of the slope to prevent erosion of the embankment.

The sequence of events relating to the revision or modification of the plans was explained by Mr. Westrick, the resident engineer of the Kentucky Department of Highways assigned to the project. We might explain that Westrick left the highway department in the latter part of September 1966, approximately one month prior to the accident, and went to work for Ruby, one of the defendants in this action. Westrick testified as follows:

"Q. 45. Now, there were no plans or specifications from the State Highway Department to provide the manner and method of this revision, were there?

"A. Not on the original plans, sir.

"Q. 46. Well, I will ask you, sir, if this revision was not in fact accomplished by verbal order without any plans and specifications?

"A. Well, this is not exactly true. We had, of course, observed that water was ponding against the toe of the slope, and we realized that we would have to build a fill in there to get the water away from the toe of the slope. So I instructed my —

"Q. 47. Now, excuse me —

"MR. CARROLL: Let him finish his answer.

"MR. LEIBSON: All right.

"A. So I instructed my people to go to the field and physically take cross-sections or elevation lines in the area so that we might determine what we needed to do in there and how much material we needed to put in there. And, after obtaining this information, I went to my superiors and we then decided what we needed to do in there, which at that time was to put some fill dirt in there to bring the elevation of the ground from the toe of slope to River Road to such point that it would drain toward River Road. However, there was no change order written to cover this since it was such a minor portion of the contract as a whole."

The appellant, City of Louisville, seems to attach a great deal of importance to the fact that there was apparently never any written order directing Ruby to depart from any portion of the original plans. While it is true, it seems, there was never any written order given to Ruby to this effect, the fact the resident engineer orally directed Ruby to alter the embankment and the alteration was carried out under the direct supervision of the resident engineer and subject to his approval strongly indicated the work was performed according to specifications.

The effect a verbal change has on the original plans and specifications on a road construction project was discussed by the Tennessee Supreme Court in Wood v. Foster & Creighton Company, supra, wherein it was held:

"The contractor, Foster & Creighton Company, was doing the work under contract with the State, and the City was not a party to this contract. This contractor did what the State's representative in charge of the project ordered it to do. The contractor was clearly entitled to rely on such orders without being required to make an independent check, at its peril, on the State's authority to give the order. The contractor was guilty of no negligence in the manner in which it did this work, and the damage done to the plaintiff resulted from the work being done rather than from the contractor's negligence in doing it.

\* \* \* \* \* \*

"It seems to us that as a practical matter, in the construction of public improvement, that the contractor should be relieved from checking every order given it by the public authority. The State for whom the contractor works does the engineering, stakes out the project, tells the contractor what to grade and what to do and so long as the contractor complies with these instructions by its superior then the contractor is fulfilling its obligation. If the contractor was required, at its peril, to check and double check all plans given it and required to keep an engineering force for the purpose of interpreting these plans, and was not permitted to follow the orders of the engineering force of its superior, then the costs of public improvement would be so

increased as to make them almost prohibitive. The purpose of having the State engineering department for these public improvements is to lay out these projects and to tell the contractor where to do its work. The contractor's work is not the engineering job of laying out the project but is merely in doing what it is instructed to do. So long as it does this work as it is instructed to do by its superior in a workman like manner, not negligently, then the contractor is not liable."

During the course of the trial another interesting issue was raised concerning the possible liability of Ruby even though all the construction work had followed the specifications and directions of the highway department. There is still the question of whether Ruby was negligent if it was aware that water was ponding on River Road and was causing some problem but it didn't take any action to alleviate the problem.

The testimony of a Mr. Meyer, who was Ruby's superintendent, gives us an idea of what a precarious predicament Ruby was in when the ponding problem was discovered. Meyer testified as follows:

"Q. 28. And you, as a civil engineer, saw the ponding and knew what was causing it, didn't you?

"A. Yes, sir, and it was brought to the Highway's attention.

"Q. 29. There wasn't anything that would have prevented you from digging a temporary ditch before that accident to alleviate that ponding, was there?

"A. If you work for the Highway Department, they tell you that you cannot go off of their right-of-way without their written permission.

"Q. 30. Mr. Meyer, knowing the existence of the situation that you have described, there wouldn't have been anything to prevent you from taking one of Ruby's backhoes or other excavating equipment and digging something that would have prevented that water from ponding on River Road, would it? No one told you you couldn't do that?

"MR. CARROLL: He has just answered that question the State tells you you can't go off the right-of-way without their written permission.

"THE COURT: Overruled. Let him answer.

"A. The state tells you that you can't leave their right-of-way and do work outside. In other words, if I was doing work on your property, I couldn't go over to a neighbor's and do anything."

Mr. Meyer further testified that the flooding was occurring off the right-of-way on private property on which the highway department held a construction easement.

We conclude the additional fill work done by Ruby was carried out pursuant to the construction contract with the highway department. As a matter of necessity the highway department must retain the authority to order that minor changes be made in the plans when unforeseeable conditions arise. In the instant case, such a condition did arise and the highway department adopted what it felt to be the appropriate remedy. Ruby only did what it was instructed to do by the highway department officials. Therefore, the trial court was correct in directing a verdict in favor of Ruby.

The judgment is affirmed on both the direct and cross-appeals.

All concur.