86 F.3d 613
 Tina DOTSON, Plaintiff-Appellant,
v.
SCOTTY'S CONTRACTING, INC., E.H. Hughes Company, Inc.,
Scotty's Contracting, Inc., and Subsidiaries, and
E.H. Hughes Company, Inc., and
Subsidiaries, a Joint Venture,
Defendants-Appellees.
 No. 94-6533.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 7, 1996.
Decided June 21, 1996.
 
 Joseph P. Bednarz (argued and briefed), Bednarz, Dalton & Eason, Nashville, TN, for Tina Dotson.
 Frank Miller, Jr. (argued and briefed), Boehl, Stopher & Graves, Louisville, KY, Donald L. Miller, II (argued and briefed), Brown, Todd & Heyburn, Louisville, KY, for Scotty's Contracting, Inc., E.H. Hughes Co., Inc., Scotty's Contracting, Inc. and Subsidiaries.
 Frank Miller, Jr., Boehl, Stopher & Graves, Louisville, KY, Donald L. Miller, II, Douglas W. Langdon, Brown, Todd & Heyburn, for E.H. Hughes Co., Inc. and Subsidiaries.
 Before: NELSON and SILER, Circuit Judges; WISEMAN, District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is a personal injury case, brought in federal court on diversity grounds, in which the plaintiff appeals from a judgment entered on a verdict in favor of the defendants. Two questions are presented for our review: (1) whether the district court so plainly erred (to the plaintiff's prejudice) in a jury instruction regarding the defendants' duty of care that the plaintiff must be granted a new trial notwithstanding the absence of a proper objection to the instruction; and (2) whether the district court was required either to declare a mistrial sua sponte or to grant the plaintiff's subsequent motion for a new trial on the basis of improprieties in the defendants' closing argument to the jury. Concluding that both questions must be answered in the negative, we shall affirm the judgment.
 
 
 2
 * The case arises from a 1988 motor vehicle accident that occurred in Hardin County, Kentucky, when a number of high school students were returning to their home in Tennessee from a school color guard competition in Ohio. The plaintiff, 15-year-old Tina Dotson, was a passenger in a minivan driven by Fay Goodwin, the mother of one of Ms. Dotson's schoolmates.
 
 
 3
 Mrs. Goodwin was proceeding south in the left-hand lane of Interstate Highway 65 when a car began to pass on her right. The car came over into her lane, and in order to avoid a collision Mrs. Goodwin pulled onto the left shoulder. There was evidence that the shoulder sloped very steeply. The back wheels of the van hit some gravel, according to a witness who was driving immediately behind, and the van began to fishtail. Mrs. Goodwin got the van back onto the road, the witness testified, but the vehicle hit the gravel again and "started flipping across the interstate median." Mrs. Goodwin's daughter and another passenger were killed, and Ms. Dotson was very seriously injured.
 
 
 4
 A series of lawsuits followed. In addition to suing her local school system, Ms. Dotson brought a state court action against Mrs. Goodwin for negligent operation of the van; joined in a Kentucky Board of Claims proceeding against the Kentucky Transportation Cabinet for negligent design and maintenance of the highway; and brought the present federal case against the members of a joint venture that in 1983 had been awarded a contract for repaving Interstate 65. The complaint filed in the federal action alleged that the contractors either negligently failed to comply with the specifications of the contract or created a condition so obviously dangerous that they should not have followed the specifications. The complaint went on to allege two specific defects: that the shoulder of the highway had a degree of slope which was too severe, and that the gravel was not properly compacted.
 
 
 5
 Prior to trial the defendants moved for summary judgment on the ground that they had been insulated from liability by the Commonwealth's acceptance of the repaving work as being in substantial conformity with the contract specifications. The district court denied the summary judgment motion, explaining its understanding of the pertinent law as follows:
 
 
 6
 "Under Kentucky law, contractors are not liable for injuries resulting from road construction that conforms to specifications of a contract with the Department of Highways. City of Louisville v. Padgett, 457 S.W.2d 485 (Ky.1970); Hollars v. Gilreath Dairy Co. et al., 253 S.W.2d 62 (Ky.1952). The court infers from the language of these opinions that Kentucky's highest court would hold that the converse is also true: contractors are liable for injuries resulting from construction that does not conform to specifications. Padgett at 488; Hollars at 620; see also Saylor v. Hall, 497 S.W.2d 218 (Ky.1973)(citing Restatement of Torts, Second § 385 and Prosser to the effect that contractor is liable for all foreseeable injuries, even if the landowner has accepted the work and dangerous conditions are not concealed.) The issues of whether the defendants' work conformed to contract specifications and whether any such failure caused the plaintiff's injuries are therefore material to this dispute. The plaintiff has raised genuine questions of fact as to these issues."
 
 
 7
 The matter proceeded to trial, and the defendants moved for a directed verdict both at the conclusion of the plaintiff's evidence and at the conclusion of all of the evidence. These motions were likewise denied. The case then went to the jury under a set of instructions that included, as "Instruction No. III," the following:
 
 
 8
 "It was the duty of [the defendants] to exercise ordinary care in fulfilling the terms of their contract with the Commonwealth of Kentucky to construct the median shoulder side slope to within reasonably close conformity to the typical drawings and specifications provided by the federal government and the Commonwealth of Kentucky, subject to the approval, interpretations and direction of the Commonwealth of Kentucky Engineers' Inspectors."
 
 
 9
 An interrogatory accompanying this instruction asked the jury whether the defendants had failed to comply with any of the duties so described. The jury responded "NO." Judgment was therefore entered for the defendants. The plaintiff moved for a new trial, and the district court denied the motion. This appeal followed.
 
 II
 
 10
 Rule 51, Fed.R.Civ.P., provides in part as follows:
 
 
 11
 "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. * * * No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury." (Emphasis supplied.)
 
 
 12
 In the case at bar both sides filed written requests for jury instructions pursuant to Rule 51. Included in the defendants' requests was an instruction substantially identical to that ultimately given as Instruction No. III. When the trial court informed counsel of its proposed action on the requests and provided an opportunity to make objections, counsel for Ms. Dotson responded thus: "On behalf of the plaintiff, Your Honor, I respectfully object to those instructions not tendered on behalf of the plaintiff." The court replied "[a]ll right, I'm going to ask you to be specific."
 
 
 13
 Counsel for the plaintiff then made specific objections to a proposed apportionment instruction. After counsel had finished, the court stated that "[t]hose are the objections I'm going to rule on...." Counsel presented no further objections. At no point in the charge conference, as far as the record discloses, did the plaintiff's lawyer offer any specific objection to Instruction No. III.
 
 
 14
 After the jury had received the charge, the court asked if there were any objections to the instructions as given. Counsel for the defendants indicated that they had no objections. Counsel for the plaintiff stood mute. Against this background the defendants contend on appeal that the plaintiff has waived any contention that Instruction No. III was improper.
 
 
 15
 The plaintiff makes a two-part response. First, she says, there was an objection to all instructions other than those tendered by the plaintiff herself. The district court was keenly aware of the plaintiff's position as to the duties of contractors, the response continues, both because the plaintiff had submitted her own proposed instruction on this subject and because the issue had been fully argued in connection with the summary judgment motion and the defendants' motions for a directed verdict. "[A]nother objection," the plaintiff submits, "would have been a mere formality and an exercise in futility."
 
 
 16
 Second, the plaintiff says, Instruction No. III was so plainly erroneous--and the error was so highly prejudicial--that compliance with Rule 51 was unnecessary. In this connection the plaintiff cites Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir.1987), and Fryman v. Federal Crop Ins. Corp., 936 F.2d 244 (6th Cir.1991).
 
 
 17
 We find neither branch of the plaintiff's argument persuasive. As to the assertion that the plaintiff did all that was required of her under Rule 51, the plain language of the rule shows otherwise. A global objection of the sort offered here--an objection, on unspecified grounds, to everything in the charge other than what had been proposed by the objecting party--is hardly an objection "stating distinctly the matter objected to and the grounds of the objection." The trial judge was entitled to know the specifics of the plaintiff's objections. And counsel for the plaintiff was fully aware that the judge wanted specificity, because the judge said so: "I'm going to ask you to be specific." When counsel had finished specifying his objections to the apportionment instruction, moreover, the court made it clear that if counsel wanted a ruling on any other objections, he would have to specify what those objections were. It is hard to imagine more compelling circumstances for refusing to permit the assignment as error of the giving of an instruction not specifically objected to.
 
 
 18
 The suggestion that a specific objection to Instruction No. III would have been "an exercise in futility" is, to say the least, self-contradictory. The plaintiff argues that the trial court already knew what her position was with respect to the contractors' duty, that position having been fully explained in her opposition to the summary judgment and directed verdict motions. But the plaintiff ignores the fact that the trial court had decided those motions in her favor. How can we assume that if the plaintiff had challenged Instruction No. III as inconsistent with the court's previous rulings, the court would have rejected a position it had repeatedly sustained?
 
 
 19
 The logical assumption, it seems to us, is that the inconsistency, if any, did not exactly leap out at the trial court. And we can only speculate as to how the court would have ruled if the alleged inconsistency had been called to its attention in a timely objection.
 
 
 20
 The assertion that the giving of Instruction No. III constituted "plain error" is equally unpersuasive. We shall assume, for purposes of analysis, that the summary of Kentucky law given by the trial court in its denial of the defendants' summary judgment motion was correct. We shall assume, in other words, that Kentucky's acceptance of the repaving job as being in conformity with the contract specifications could not insulate the contractors from liability if the contractors had not in fact met the specifications and the plaintiff had been injured as a result. Instruction No. III, as we read it, is not necessarily inconsistent with this view of the law.
 
 
 21
 The plaintiff does not take issue with the first portion of the instruction, which says that the defendants were under a duty to exercise "ordinary care" in fulfilling the terms of their contract.[1] Neither does the plaintiff deny that the terms of the contract required the defendants to "construct the median shoulder side slope to within reasonably close conformity to the typical drawings and specifications provided by the federal government and the Commonwealth of Kentucky." What the plaintiff does object to is the final clause of the instruction, containing the words "subject to the approval ... of the Commonwealth of Kentucky Engineers' Inspectors." The plaintiff now interprets this clause as qualifying the duty to exercise ordinary care, and not as merely paraphrasing the terms of the contract.
 
 
 22
 As a paraphrase of the contract, it seems to us, the clause is accurate. The defendants did indeed have a contract to build the shoulder so that its slope would conform closely to the typical drawings and specifications, subject to the approval of the Commonwealth's inspectors. But if the clause is read as relating to the defendants' duty of care, rather than to the terms of the contract, its inclusion could be misleading; the duty of care, ex hypothesi, is not subject to the approval of the Commonwealth's inspectors. Approval may constitute evidence that the contractors in fact used due care in performing the contract, but it cannot be dispositive of that question as a matter of law.
 
 
 23
 Instruction No. III may well have been ambiguous. In our view, however, it did not amount to "plain error"--error "obvious and prejudicial"--within the concept explained in Ivey v. Wilson, 832 F.2d at 955. And if the instruction was accurate under one possible interpretation and potentially misleading under another, it was the responsibility of the plaintiff to call the ambiguity to the attention of the court before the jury retired to deliberate.
 
 
 24
 Had the plaintiff discharged her responsibility, the trial court might have dropped the offending clause entirely. Or the court might have gone on to explain the legal significance of the Commonwealth's approval and acceptance of the work. The plaintiff asked neither to have the clause dropped nor to have it explained, however, and she may not now be heard to complain of the court's failure to give her what she failed to ask for.
 
 III
 
 25
 The plaintiff alleges "several deliberate acts of misconduct" during the closing argument presented by attorney William O. Guethlein on behalf of one of the joint venturers. First, the plaintiff complains, Mr. Guethlein repeatedly referred to her lawyer, Joe Bednarz, by his first name. Second, the plaintiff says, Mr. Guethlein lied to the jury about a supposed conflict of interest on Mr. Bednarz' part.
 
 
 26
 As to the use of the first name, we agree that it was inappropriate. If the plaintiff wanted the trial court to caution Mr. Guethlein to be less familiar, however, she should have made her desire known. See Rule 46, Fed.R.Civ.P. ("it is sufficient that a party ... makes known to the court the action which the party desires the court to take ..."). For all the court could tell, the plaintiff might have thought that Mr. Guethlein was rubbing the jury the wrong way and might have been happy for him to continue doing so. In any event, the chance that Mr. Guethlein's apparent lack of courtesy had any effect whatever on the jury's verdict strikes us as negligible.
 
 
 27
 As to the statement about the alleged conflict of interest, Mr. Guethlein told the jury that although Mr. Bednarz represented Tina Dotson in the Tennessee lawsuit against Mrs. Goodwin, Mr. Bednarz was also listed as attorney for Mrs. Goodwin, or her deceased daughter, in the Kentucky Board of Claims. "So in one hand he's suing Fay Goodwin in Nashville and saying she was negligent and lost control," Mr. Guethlein continued, "and on the other hand he's representing Fay Goodwin for the death of her daughter." Mr. Bednarz interjected that this was not true. "I never represented Fay Goodwin at all," Mr. Bednarz told the jury. The following exchange then occurred:
 
 
 28
 "MR. GUETHLEIN: Well, we got a pleading here that says you did.
 
 
 29
 MR. BEDNARZ: No, no, it's not.
 
 
 30
 MR. GUETHLEIN: Maybe that's a mistake."
 
 
 31
 After this acknowledgement that he might have been mistaken, Mr. Guethlein went on to another subject.
 
 
 32
 Mr. Bednarz did not move for a mistrial, nor did he ask the trial court to say anything to the jury or to take any other action. In his rebuttal argument, however, Mr. Bednarz again told the jury that he had not sued on behalf of Fay Goodwin:
 
 
 33
 "No. No sir. No ma'am. I've never represented Fay Goodwin and I've never represented her daughter and Mr. Guethlein made a mistake and I hated interrupting, but it was such an important issue. He was clearly wrong...."
 
 
 34
 There the matter was left.
 
 
 35
 Here again if the plaintiff had wanted the trial court to take some action, she should have asked the court to do so. Judges are not mind readers, and they cannot normally be expected to divine a party's desires without being told what those desires are. It appears to us--and it may well have appeared to the trial court--that Mr. Guethlein's acknowledged mistake would have tended to damage Mr. Guethlein's credibility, not that of his opponent. It seems reasonable to us that Mr. Bednarz should have decided to leave well enough alone, without getting the trial judge involved--and it was certainly not error for the judge to refrain from stepping in unasked.
 
 IV
 
 36
 In summary, we cannot say that Jury Instruction No. III constituted "plain error." That being so, the plaintiff's failure to make a timely and specific objection to the instruction--"stating distinctly the matter objected to and the grounds of the objection"--dooms the plaintiff's first assignment of error. The second assignment of error fails because the court committed no error during closing argument and because the missteps of defense counsel were harmless. Nothing in the record persuades us that the trial court abused its discretion in denying the motion for a new trial, and the judgment entered on the jury's verdict is AFFIRMED.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 Instruction No. II defined "ordinary care" as "such care as an ordinarily prudent person would exercise under similar circumstances."