Clarence GILBERT; Ozella Gilbert, His Wife; and Arkansas Best Corporation, Appellants,

v.

MURRAY PAVING CO., INC., Appellee.

No. 2002–CA–000160–MR.

Court of Appeals of Kentucky.

Nov. 7, 2003.

Rehearing Denied Jan. 30, 2004.

Discretionary Review Denied by Supreme Court Nov. 10, 2004.

Charles E. Moore, Travis L. Holtrey, Owensboro, KY, for appellants.

Van F. Sims, Paducah, KY, for appellee.

Before DYCHE, JOHNSON and SCHRODER, Judges.

## OPINION

JOHNSON, JUDGE.

Clarence Gilbert and his wife, Ozella Gilbert, have appealed from an order entered by the Calloway Circuit Court on December 21, 2001, which granted Murray Paving Co., Inc.'s motion for summary judgment. Having concluded that the trial court erred in determining that there was no genuine issue as to any material fact and that Murray Paving was entitled to judgment as a matter of law, we reverse and remand.

Pursuant to a contract dated March 4, 1999, the Commonwealth of Kentucky, Department of Highways (Department) awarded a highway construction contract to Murray Paving for the purpose of resurfacing portions of two highways in Calloway County, Kentucky. The Department established the standards for Murray Paving's work, designed and laid out the work, and provided the project engineer, state

inspector and final inspector. The contract required Murray Paving to resurface portions of Highway 94 and Wisewell–Harris Road. The resurfacing of Highway 94 [1] extended east from Lynn Grove to Murray, for a total distance of 6.493 miles. It is this highway work that is the subject of this appeal.

Murray Paving's work consisted of applying an additional layer of asphalt to the surface of the pre-existing paved road and paved shoulder wedge. The contract did not provide for any earth work or shoulder work on the side of the roadway adjacent to the paved shoulder or "wedge" [2] of Highway 94. The contract specifically provided that Murray Paving was not to "construct a shoulder for placing the wedge unless specified elsewhere in the Contract." There is evidence in the record that proper construction methods provide for the wedge to be applied on top of the existing shoulder and the wedge is to be tapered as it proceeds from the roadway's driving surface to the earthen shoulder. There was no provision under the contract for any work to widen Highway 94 or to extend the paved shoulder. All of the work under the contract was to be performed in accordance with the Department of Highways' Standard Specifications for Road and Bridge Construction.

Murray Paving began resurfacing the section of Highway 94 on June 28, 1999. The Department assigned its Cadiz field office to supervise the project. Robert Burchett, the resident engineer who supervised the project, furnished Murray Paving with the necessary plans, engineering, and inspection for the resurfacing project. Burchett assigned Cindy Gray, an inspector for the Kentucky Transportation Cabinet, to handle the daily field inspection of Murray Paving's work. Gray was present at the work site each day as Murray Paving's work progressed. Gray's duties included measuring the distance to be resurfaced and staking out the project. Gray's additional duties included ensuring that the contract specifications were met, ensuring that the proper safety signs were in place, measuring the quantities of the asphalt applied, checking the amount of asphalt being deposited on the roadway, and ensuring that the shoulder edges were as low and as tapered as possible. Gray submitted daily inspection reports as the resurfacing progressed. Gray had the authority to reject any of Murray Paving's work that did not satisfy the contract specifications.

After the resurfacing was completed, the safety signs, which were the property of Murray Paving, were removed from that work zone and placed on Highway 121, where Murray Paving was to begin work on another highway construction project. Burchett testified that after a project was completed, the Department preferred that the contractor remove the road construction signs within a day or two of the project's completion date because otherwise, motorists may come to assume that no construction is occurring at any site and hence, ignore the signs.

Pursuant to the contract, Murray Paving initially applied additional asphalt to low spots on the existing paved surface of Highway 94. This process, known as leveling and wedging, requires the application of asphalt to lower spots in the existing roadway so that the roadway's traveled surface will be smooth when the final resurfacing is applied. The Department directed which low spots were to be filled.

---

1. Highway 94 is a two-lane, asphalt highway running in an east-west direction.

2. The "wedge" also known as the "pavement wedge" is synonymous with the "paved shoulder".

As the resurfacing work proceeded, Gray would walk alongside the roadway with the paving machine to examine Murray Paving's work. Gray testified that she would check the entire resurfacing project from side to side, which presumably included the pavement wedge. Gray testified that in order for the work to comply with the specifications, the goal was to get the shoulder edge, adjacent to the earth, down to a height of one inch "where existing conditions permit." Gray also stated that in some areas, Murray Paving could not get the roadside edge down to a height of one inch because it "was going down into a ditch," adding that "[t]here's not much you can do about that if we don't have earth and shoulder to lay on." Gray further testified that Murray Paving tried everything to get the shoulder down as low as possible, and that in her opinion, "there was nothing else we could do" under the existing conditions. When Murray Paving stopped the resurfacing of Highway 94 on July 10, 1999, based on its belief that the work was completed, the safety signs that had been placed on the right-of-way in the work zone during the work on this portion of the contract were removed.

On July 30, 1999, Clarence Gilbert was operating a tractor-trailer owned by his employer, ABF Freight Systems, on Highway 94 traveling west from Murray, Kentucky, in route to Union City, Tennessee. The weather was clear and the pavement was dry. Gilbert testified that a pickup truck pulling a trailer loaded with hay approached him in the eastbound lane. Although the pickup truck never crossed the highway's center line, the trailer was weaving and the hay extended six to twelve inches into Gilbert's lane. In order to avoid the approaching trailer and hay, Gilbert steered his tractor-trailer to the right onto the highway's rumble strip.[3] Gilbert did not apply his brakes, but he did let off the accelerator. The tractor-trailer's tires were still on the rumble strip when the pickup truck and trailer passed Gilbert, but immediately thereafter, Gilbert lost control of his tractor-trailer and it left the right side of Highway 94.

Gilbert alleged that he lost control of his tractor-trailer because it dropped off the shoulder. He testified that as he attempted to steer his tractor-trailer back onto the paved surface, its wheels suddenly bounced back onto the highway. As the tractor-trailer returned to the highway, it crossed both lanes of Highway 94 and left the roadway on the south side of the highway. Gilbert was injured as a result of the accident.

On February 2, 2000, Gilbert filed this action in Calloway Circuit Court against Murray Paving, alleging that it had negligently performed the resurfacing of Highway 94 and that it had failed to warn of the dangerous condition on the roadway.[4] On October 29, 2001, Murray Paving filed a motion for summary judgment, which the trial court granted on December 21, 2001. In granting Murray Paving's motion for summary judgment, the trial court concluded that "[w]here Murray Paving performed the work as specified by the State Highway Department, and the work was accepted without corrective action, there [were] no genuine issues of material fact and [Murray Paving] was entitled to judgment as a matter of law." Although the trial court acknowledged that there is no Kentucky case law adopting an "accepted

---

3. The purpose of a rumble strip is to alert a motorist that his or her vehicle is near the edge of the road by causing the vehicle to vibrate.

4. Gilbert received workers' compensation benefits from Arkansas Best Corporation, which intervened in this civil action.

work theory," it nevertheless held that "reported Kentucky decisions follow the theory that a contractor is not negligent in completing a highway resurfacing contract in compliance with the requirements of the State Department of Transportation." This appeal followed.

Gilbert claims in this appeal that summary judgment in favor of Murray Paving was improper because a genuine issue of material fact exists (1) as to whether Murray Paving negligently performed the work on the highway construction project, and (2) as to whether Murray Paving gave adequate warning with regard to the alleged dangerous pavement wedge drop-off.

Summary judgment is only proper "where the movant shows that the adverse party could not prevail under any circumstances."[5] The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor."[6] However, "a party opposing a properly supported summary judgment motion cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial."[7] This Court has previously stated that "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. There is no requirement that the appellate court defer to the trial court since factual findings are not at issue" [citation omitted].[8]

Gilbert first argues that summary judgment was improper "because a factual dispute exists concerning whether the work [by Murray Paving] was performed" according to the specifications and/or in a negligent manner. In *City of Louisville v. Padgett*,[9] the former Court of Appeals discussed the scope of a contractor's liability when performing a highway construction contract according to plans and specifications mandated by the Commonwealth:

> Ordinarily one contracting with the sovereign Commonwealth of Kentucky who performs his contract in conformity with the plans and specifications of the contract will not be held liable for injury to the public in the absence of a *negligent* or a [willful] tortious act ... [citations omitted] [emphasis added].
>
> . . .
>
> The purpose of having the State engineering department for these public improvements is to lay out these projects and to tell the contractor where to do its work. The contractors work is not the engineering job of laying out the project but is merely in doing what it is instructed to do. So long as it does this work as it is instructed to do by its superior in a workman like manner, *not negligently*, then the contractor is not liable [emphasis added].[10]

5. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991) (citing *Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985)).

6. *Steelvest*, 807 S.W.2d at 480 (citing *Dossett v. New York Mining & Manufacturing Co.*, Ky., 451 S.W.2d 843 (1970)).

7. *Hubble v. Johnson*, Ky., 841 S.W.2d 169, 171 (1992)(citing *Steelvest*, *supra* at 480).

8. *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996).

9. Ky., 457 S.W.2d 485, 488–90 (1970).

10. *Id.* (quoting *Wood v. Foster & Creighton Co.*, 191 Tenn. 478, 235 S.W.2d 1 (1950)).

■ Hence, while the general rule is that a contractor cannot be held liable if it complied with the plans and specifications laid out by the government entity in the construction contract, the Court in *Padgett* was careful to note that the contractor is not absolved of a duty to perform the work required with reasonable care, *i.e.*, in a non-negligent manner.[11] In the case at bar, we conclude that genuine issues of material fact exist with regard to whether Murray Paving performed its obligations under the highway construction contract in a negligent manner.

In the contract at issue, the Department provided a diagram of a typical section that Murray Paving was to use as a guide in the paving project. The diagram shows that the pavement wedge was to have a drop-off height of one inch from the pavement to the unpaved earth. A special note to the typical section stated that this one-inch drop-off requirement is to be followed where existing conditions permit.

It is not disputed that at the point where Gilbert's tractor-trailer left the roadway, the drop-off point on the pavement wedge exceeded the desired height of one inch and may have been as high as five and one-half inches. Trace Curd, Murray Paving's foreman on this project, and Ronnie Guerin, Murray Paving's former owner, both testified that they knew that their goal under the contract was to get the pavement wedge as close to the one-inch requirement as possible. Further, Curd testified that he believed that he had the ability to get the drop-off height closer to the one-inch requirement than the height of the drop-off point where Gilbert's vehicles tires left the roadway. State inspec-

tors, including both Burchett and Gray, testified that they rely upon the contractors to do everything they can to get the dimensions as close to the typical section as possible. Finally, Jim Scherocman, Gilbert's retained expert, offered testimony that in his opinion, Murray Paving could have and should have increased the slope to get the drop-off height closer to the one-inch requirement. We conclude that this evidence precludes a finding by the trial court that there is no genuine issue as to any material fact and it further precludes a conclusion that Gilbert could not show negligence on the part of Murray Paving at trial under any circumstances. Thus, summary judgment was improper.

Murray Paving, both in its brief to this Court and at oral argument, argued that the desired drop-off height could not have been accomplished at the point in question within in the contract specifications. Murray Paving contended that increasing the slope of the pavement wedge in order to reach the desired height of one inch would have adversely affected the cross-slope of the roadway, thereby taking the roadway outside its own slope requirements. Murray Paving argues that summary judgment was therefore proper since it performed the contract according to specifications in a non-negligent manner.

However, this assertion on the part of Murray Paving only further serves to demonstrate that a genuine issue of material fact exists with regard to whether it performed the contract within the specifications and/or in a non-negligent manner. The evidence and arguments offered by

**11.** *See also Combs v. Codell Construction Co.*, 244 Ky. 772, 773, 52 S.W.2d 719, 720 (1932)(stating that "[t]he defendant denied negligence and claimed immunity from liability because it was but executing its contract with the highway commission and building the roadway according to plans and specifications provided by it. The immunity does not absolve the contractor from negligence in performing his contract").

both Gilbert and Murray Paving are properly left for the fact-finder to consider. Accordingly, summary judgment in favor of Murray Paving on the issue of its alleged negligence in the resurfacing of the pavement was improper.

Gilbert next argues that summary judgment was also improper on the issue of whether Murray Paving was negligent in failing to give adequate warning that the pavement wedge where Gilbert's tractor-trailer left the roadway had a drop-off height in excess of the desired height of one inch. In *State Contracting Stone Co. v. Fulkerson,*[12] the former Court of Appeals succinctly stated the duty of road contractors with respect to dangerous conditions that arise from the road work:

> It is the duty of a road contractor to provide and maintain adequate and appropriate notice of hazardous conditions arising from the highway construction work.

■ In the instant case, it is not disputed that the drop-off height where Gilbert's vehicle left the roadway was such that it created a dangerous condition. Indeed, the traffic control plan for this project stated that for pavement edges which were between two and four inches in height, where traffic was not expected to cross, except accidentally, warning devices such as plastic drums, vertical panels, or barricades were required. Evidence in the record suggests that the pavement edge where Gilbert's tractor-trailer left the roadway was of such a height that warnings should have been put into place.

Murray Paving argues that no warnings were required because the drop-off point in question was an open and apparent condition that Gilbert should have seen in time to avoid the accident. However, this argument ignores the fact that Mike Oliver, the state employee who performed the final inspection, testified that he did not notice the excessive pavement wedge drop-off, and that if he had noticed it, he would have reported the high drop-off to his supervisor. Thus, whether Murray Paving was negligent in failing to provide adequate warning is a disputed issue of material fact. Accordingly, summary judgment on this issue was also improperly entered.

■ Finally, we address Murray Paving's argument that it was entitled to summary judgment on the basis that the Department had accepted the work done by Murray Paving, thereby absolving it of any liability. First, we note that the Department had not yet finally accepted the work done by Murray Paving until *after* the date of Gilbert's accident. Gilbert's accident occurred on July 30, 1999. The record shows that the Department did not finally accept the work until a completion notice was signed on August 11, 1999. Regardless of this fact however, we do not believe the issue of Murray Paving's alleged negligence turns on the acceptance or non-acceptance of the work by the Department.

In *Saylor v. Hall,*[13] the former Court of Appeals stated:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been

---

12. Ky., 288 S.W.2d 43, 46 (1956).

13. Ky., 497 S.W.2d 218, 224 (1973)(quoting *Restatement (Second) of Torts,* § 385 (1965)).

accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

This rule from *Saylor* is clear; the acceptance or non-acceptance by the possessor does not affect the liability of the party who creates a dangerous condition on the land of the possessor.[14] Hence, in the case at bar, the Department's acceptance or non-acceptance of Murray Paving's work is not pertinent to whether Murray Paving was negligent in the performance of the highway construction project. Accordingly, once again, summary judgment in favor of Murray Paving was improper.

Based on the foregoing reasons, the order of the Calloway Circuit Court granting summary judgment in favor of Murray Paving is reversed and this matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

**14.** *See also Adams v. Combs,* Ky., 465 S.W.2d 288, 290 (1971)(holding that the city's acceptance or non-acceptance of the contractor's work would have no bearing on the issue of the contractor's liability since "it was his primary and active negligence that created the dangerous situation and the city's negligence in failing to remedy the situation would be only secondary and passive").