RENDERED: MAY 24, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1187-MR

KRISTINA L. IVES, INDIVIDUALLY;
KRISTINA L. IVES, AS THE
PERSONAL REPRESENTATIVE AND
ADMINISTRATRIX OF THE ESTATE
OF HIRAM DUDLEY IVES, III; AND
KRISTINA L. IVES, AS THE NEXT
FRIEND FOR THE MINOR
CHILDREN, HIRAM MILLER IVES
AND JUNE LELIA IVES                                              APPELLANTS


                          APPEAL FROM FAYETTE CIRCUIT COURT
v.            HONORABLE KIMBERLY N. BUNNELL, JUDGE
                          ACTION NO. 19-CI-00334


HMB PROFESSIONAL ENGINEERS,
INC.; HAWORTH-MEYER-BOLEYN
PROFESSIONAL ENGINEERS, INC.;
AND D. PAUL LINCKS                                                APPELLEES

AND


NO. 2021-CA-1223-MR

JENNINGS L. COPLEY AND NECTO
ARCHITECTURE, PSC                                                APPELLANTS

APPEAL FROM FAYETTE CIRCUIT COURT
v.      HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 19-CI-00334


HMB PROFESSIONAL ENGINEERS,
INC.; HAYWORTH-MEYER-
BOLEYN PROFESSIONAL
ENGINEERS, INC.; AND D. PAUL
LINCKS                                              APPELLEES


AND


NO. 2021-CA-1445-MR


KRISTINA L. IVES, INDIVIDUALLY;
KRISTINA L. IVES, AS THE
PERSONAL REPRESENTATIVE AND
ADMINISTRATRIX OF THE ESTATE
OF HIRAM DUDLEY IVES, III; AND
KRISTINA L. IVES, AS THE NEXT
FRIEND FOR THE MINOR
CHILDREN, HIRAM MILLER IVES
AND JUNE LELIA IVES                                 APPELLANTS


APPEAL FROM FAYETTE CIRCUIT COURT
v.      HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 19-CI-00334


PARSONS BRINCKERHOFF, INC.;
WSP USA INC.; SUSAN ROWLAND
SLADE, AS PERSONAL
REPRESENTATIVE AND
EXECUTRIX OF THE ESTATE OF
FRANK STEVEN SLADE; HDR

ENGINEERING, INC.; AND JAMES L.
GUINN                                                    APPELLEES

AND

NO. 2021-CA-1501-MR

JENNINGS L. COPLEY AND NECTO
ARCHITECTURE, PSC                                        APPELLANTS

APPEAL FROM FAYETTE CIRCUIT COURT
v.      HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 19-CI-00334

PARSONS BRINCKERHOFF, INC.;
WSP USA INC.; SUSAN ROWLAND
SLADE, AS PERSONAL
REPRESENTATIVE AND
EXECUTRIX OF THE ESTATE OF
FRANK STEVEN SLADE; HDR
ENGINEERING, INC.; AND JAMES L.
GUINN                                                    APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, A. JONES, AND LAMBERT, JUDGES.

JONES, A., JUDGE:  These four appeals arise out of a catastrophic automobile

accident that killed Hiram Dudley Ives, III ("Ives") and seriously injured his

-3-

business partner, Jennings L. Copley ("Copley"). After the accident, Ives's widow and the personal representative of his estate, Kristina, filed a wrongful death and negligence suit against Copley on behalf of herself, Ives's two minor children, and Ives's estate (collectively referred to herein as "the Estate"). Eventually, the case morphed to include as defendants the various engineers and engineering firms that oversaw the widening of the section of Interstate 65 ("I-65") where the accident occurred (collectively referred to herein as "the Engineers").[1]

Following extensive discovery, the Fayette Circuit Court granted summary judgment in favor of the Engineers after concluding they were "immune" and that all the claims asserted against them were preempted by federal law. The Estate and Copley[2] (hereinafter collectively referred to as "Appellants") appealed.

Having reviewed the record and being otherwise sufficiently advised in the law, we reverse and remand for further proceedings.

---

[1] Specifically, the Estate named: (1) HMB Professional Engineers, Inc., Hayworth-Meyer-Boleyn Professional Engineers, Inc., and their employee D. Paul Lincks; (2) Parsons Brinckerhoff, Inc., WSP USA Inc., and the personal representative and executrix of the estate of its former employee Frank Steven Slade; and (3) HDR Engineering, Inc., and its employee, James L. Guinn.

[2] After the Estate amended its complaint to include claims against the Engineers, Copley and his firm, Necto Architecture, PSC (collectively referred to herein as "Copley"), filed a third-party complaint against the Engineers.

# I. BACKGROUND

Copley and Ives worked together at Necto, an architectural firm. At some point shortly before the accident at issue, they drove from their homebase in Lexington, Kentucky to the western part of the state to meet with a client. Their trip home on the afternoon of October 2, 2018, required them to drive northbound on I-65. Copley was driving a rented 2018 Chevrolet Malibu, and Ives was riding in the Malibu's front passenger seat. It was raining. Around 1:30 p.m., near mile marker sixty-seven, Copley lost control of the Malibu. The vehicle slid from the left lane and across the center and right lanes. After the right-side guardrail stopped the vehicle's forward motion, it rolled slightly backward and into the right lane of traffic facing the guardrail.[3] The vehicle was then struck on the passenger's side by a semi tractor-trailer operated by Kevin C. Hockman.

Police responded to the accident scene within minutes. Copley was taken by EMS to nearby Hardin Memorial Hospital; he was later transferred to the University of Louisville Hospital. Although seriously injured, Copley survived.

---

[3] The portion of I-65 where the accident occurred contains a concrete barrier wall running through the median, which separates the northbound and southbound portions of the interstate from one another. Both sides of the barrier contain fourteen-foot shoulders that separate the barrier from the lanes of traffic. There are three twelve-foot traffic lanes going in each direction with twelve-foot right-side shoulders for a total of six lanes.

Sadly, Ives did not. He was pronounced deceased at the scene by the Hart County Deputy Coroner.

The police report completed by Kentucky State Police Investigator Daniel Priddy indicated that "weather conditions in the area" caused the Malibu to hydroplane. Meteorological experts retained by the Estate opined that shortly before the accident, the area around and just south of the crash scene experienced a brief but intense rainfall event. These experts estimated that the rainfall rate at the crash scene at the time of the accident was approximately half an inch per hour, but that five minutes prior to the accident and one-half mile south of the accident scene rain was falling at a rate somewhere between 2.0 and 4.5 inches per hour.

Prior to the accident, I-65 was expanded and widened from four lanes to six lanes. The project was costly and spanned approximately fourteen years (1999 to 2013). The Engineers were engaged by the Kentucky Transportation Cabinet ("KYTC") to redesign I-65 around the location of the subject accident. WSP served as the prime engineer. HMB and HDR were subcontractors on the project. The Engineers worked together as a team and each firm placed its professional seal on the final design plans.

Because I-65 is part of the National Highway System, the final design plan for the rewidening project, called the Design Executive Summary ("DES"), including the specifications for the section of I-65 at issue in this case, had to be

approved by KYTC and the Federal Highway Administration ("FHWA"). 23

U.S.C.[4] § 109(b). Early in the project, the Engineers notified KYTC of a

preexisting geometric layout of the roadway around the crash scene – a sag vertical

curve – that did not meet FHWA design criteria for minimum stopping sight

distance. Since federal law requires that highway designs for highways that are

part of the National Highway System either meet all minimum FHWA design

criteria or be granted an exception from meeting such standards by the FHWA, 23

C.F.R.[5] § 625.3, the Engineers prepared a design exception to be submitted as part

of the DES. KYTC approved the Engineers' DES then forwarded the DES to the

FHWA for approval. In a letter dated May 20, 2014, the FHWA notified KYTC

that it had approved the DES, which included the design exception for the sag

vertical curve. The project was completed in accordance with the DES prepared

by the Engineers and approved by both FHWA and KYTC.[6]

On January 29, 2019, the Estate filed a complaint against Copley and

USAA Casualty Insurance Company.[7] The litigation soon included several more

---

[4] United States Code.

[5] Code of Federal Regulations.

[6] The parties dispute whether the design exception for the sag vertical curve complied with the applicable standards and whether it caused or contributed to the accident at issue.

[7] USAA provided underinsured coverage to the decedent. Along with several other parties, it was dismissed following a confidential settlement with the Estate.

defendants and parties, including the Engineers.[8]  In a nutshell, Appellants allege that the Engineers negligently designed the section of I-65 in and around the crash scene thereby causing water to improperly drain, collect, and pool on the highway, which was a substantial factor in causing the accident which killed Ives and injured Copley.

To support their theory, Appellants rely heavily on highway safety engineer James J. Valenta.  The Estate retained Mr. Valenta to review the issues related to the design of I-65 where the accident occurred.  In his expert report, Mr. Valenta notes that in the area leading up to the accident site, but before the accident area, stormwater drainage inlets have been placed at the bottom of the concrete barrier wall, and that water collected by the inlets is diverted underneath the barrier and highway and is ultimately released on the right shoulder such that no water flows over the traffic lanes.  However, in the accident location, the drainage inlets were omitted by the Engineers' design plans.  In the absence of inlets, stormwater runoff accumulates in the northbound lanes and then flows across the highway before it exits the highway surface off the right shoulder.  Mr.

---

[8]  These appeals concern only Appellants' claims against the Engineers and our discussion going forward will be limited to the claims as asserted against them.

Valenta asserts that this excess collection of pooling water on the highway exponentially increases the likelihood of vehicles hydroplaning.[9]

Mr. Valenta's expert report is lengthy and highly technical in its discussion of the highway design; however, in his July 20, 2021 affidavit, Mr. Valenta summarizes the manner in which he believes the Engineers breached the applicable standard of care in their design of I-65 as follows:

- Interstate Highway 65 is on the National Highway System. The design of any improvement must comply with the design standards approved by the Federal Highway Administration in cooperation with the Kentucky Transportation Cabinet. The design plans for the left shoulder along northbound I-65 where the accident occurred did not comply with the design standards of the Federal Highway Administration or with the design standards of the Kentucky Transportation Cabinet.

- As a direct and substantial result of the design team's decision to drain the left shoulder across the northbound travel lanes, more stormwater runoff was intentionally placed on the through lanes. This additional runoff resulted in a minimum hydroplane inception speed less than the speeds at which vehicular hydroplaning was likely to occur.

- Had the design team followed the design standards of the Kentucky Transportation Cabinet then the minimum hydroplane inception speed would not have occurred in the left lane during a design rainfall event of 4 inches per hour or at the

[9] Appellants assert that subsequent traffic and crash studies by KYTC indicate that this area of I-65 experienced a marked increase in weather-related traffic accidents after the widening project was completed.

maximum rainfall intensity of 4 1/2 inches per hour.

- The design resulted in an increase in wet pavement accidents of approximately 466 percent. This increase was the result of designing stormwater runoff to drain across the through lanes. The design standards of the Kentucky Transportation Cabinet and Federal Highway Administration call for at least a portion of the shoulder area to be drained away from the through traffic lanes. This design requirement was not followed by the design team.

- As a result of the design team's professional engineers [] failing to satisfy commonly accepted standards of care and skill for design practices required to be used by professional highway design engineers for highways on the National Highway System, and specifically for I-65 in Kentucky, the design team created an unduly hazardous roadway during expected rainfall events, which was a substantial factor causing the accident.

(Emphasis added.)

The Engineers take issue with Mr. Valenta's conclusions. However, in moving for summary judgment, the Engineers maintained that they were entitled to a judgment in their favor regardless of whether Mr. Valenta is correct because (1) the KYTC and the FHWA approved their project design thereby immunizing them from liability; and (2) since federal law contains the design standards and the FHWA approved the designs, federal law preempts Appellants' state law claims.

The summary judgment briefing was voluminous and culminated in a hard-fought hearing before the circuit court. After the hearing, the circuit court entered orders in favor of the Engineers concluding that they were immune, and that Appellants' claims are federally preempted. The circuit court's orders are wholly conclusory and devoid of any discussion or analysis. After the circuit court denied their motion to alter, amend, or vacate, Appellants filed these appeals.

## II. ANALYSIS

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[10] 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute.

The party opposing the motion then has the burden to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 482 (Ky. 1991); *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 666 (Ky. 2022). "A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in its pleadings." *Versailles Farm Home and Garden, LLC v.*

---

[10] Kentucky Rules of Civil Procedure.

-11-

*Haynes*, 647 S.W.3d 205, 209 (Ky. 2022) (citing *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955)). "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and that the question should be taken from the jury when the evidence is so unsatisfactory as to require a resort to surmise and speculation." *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky. 1951)).

"An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018). The standard of review for an appellate court is *de novo* because only legal issues are involved. *Isaacs v. Sentinel Ins. Co. LTD.*, 607 S.W.3d 678, 681 (Ky. 2020).

### A. Does the KYTC's and the FHWA's Approval of the Design Plans Submitted by the Engineers Absolve Them from Any Potential Liability Related to the I-65 Project?

Citing *Rigsby v. Brighton Engineering Co.*, 464 S.W.2d 279 (Ky. 1970), the Engineers claim they are "immune" because their design plans were approved by the KYTC and the FHWA and prepared in accordance with their

-12-

design criteria, specifically as established by *A Policy on Geometric Design of Highways and Streets*, commonly referred to as the *Green Book*.[11]

The *Rigsby* Court was tasked with deciding whether negligence claims could proceed against Brighton Engineering Company, the engineering consultant to the Kentucky Department of Highways in the design of the Bluegrass Parkway. Brighton was sued after five members of the Kusza family were killed when their vehicle struck one of the bridge piers constructed as part of the highway design. The administrator of the Kusza family's estate filed suit, alleging that Brighton was negligent in failing to recommend that a guardrail be erected to prevent motor vehicles from colliding with the bridge pier. Brighton's defense was that its design was in accordance with the design standards and criteria of the Department of Highways which specified that no guardrails be located adjacent to or around that bridge pier, and that Brighton had no discretion to alter, change, or deviate from the Department's standard design. Under those specific circumstances, the *Rigsby* Court held that Brighton's failure to incorporate guardrails into its design could not support a negligence claim because "a recommendation that guardrails be installed at th[at] point would have been futile as well as contrary to the directions of the Commonwealth." *Id.* at 281.

---

[11] The *Green Book* is published by the American Association of State Highway and Transportation Officials ("AASHTO").

Although the Engineers contend that *Rigsby* held that Brighton was *immune* because it followed the Commonwealth's directives, the *Rigsby* Court did not so hold. The opinion contains no discussion of immunity. In fact, in *Combs v. Codell Construction Co.*, 52 S.W.2d 719, 720 (Ky. 1932), a case the *Rigsby* Court cited in support of its holding, the Court held:

> The <u>defendant denied negligence and claimed immunity</u> from liability because it was but executing its contract with the highway commission and building the roadway according to plans and specifications provided by it. <u>The immunity does not absolve the contractor from negligence in performing his contract.</u> *Taylor v. Westerfield*, 233 Ky. 619, 26 S.W.(2d) 557, 69 A.L.R. 482. As stated, in these cases the issue of negligence was submitted to the jury, and no complaint is made here concerning that matter.

*Id.* at 720 (emphasis added); *see also Codell Constr. Co. v. Steele*, 56 S.W.2d 955, 957 (Ky. 1933) ("[W]here an independent contractor is prosecuting work under a contract with the state or any subordinate arm thereof, he is responsible in damages to the injured third parties for his negligence in prosecuting the work, just as though he had engaged in private work."). In short, *Rigsby* is a negligence case, and it has nothing whatsoever to do with immunity as that term is commonly understood.

This is also made clear by examining *City of Louisville v. Padgett*, 457 S.W.2d 485, 488 (Ky. 1970), a case decided six months earlier and cited by the *Rigsby* Court to support its holding. In *Padgett*, the Court explained why

-14-

negligence claims could not stand against the non-engineer private contractors before it. Tellingly, the Court's explanation is couched in terms of ordinary negligence and not immunity:

> It seems to us that as a practical matter, in the construction of public improvement, that the contractor shou[ld] be relieved from checking every order given it by the public authority. The State for whom the contractor works does the engineering, stakes out the project, tells the contractor what to grade and what to do and so long as the contractor complies with these instructions by its superior then the contractor is fulfilling its obligation. If the contractor was required, at its peril, to check and double check all plans given it and required to keep an engineering force for the purpose of interpreting these plans, and was not permitted to follow the orders of the engineering force of its superior, then the costs of public improvement would be so increased as to make them almost prohibitive. The purpose of having the State engineering [department] for these public improvements is to lay out these projects and to tell the contractor where to do its work. <u>The contractor's work is not the engineering job of laying out the project but is merely in doing what it is instructed to do. So long as it does this work as it is instructed to do by its superior in a workman like manner, not negligently, then the contractor is not liable</u>.

*Id.* at 489-90 (quoting *Wood v. Foster & Creighton Co.*, 191 Tenn. 478, 235 S.W.2d 1 (1950)) (emphasis added).

A decade after it decided *Rigsby*, the Kentucky Supreme Court explained the holding as follows:

> There an automobile collided with a bridge pier on a four-lane toll road. There was no guardrail around the

> bridge pier. Brighton, designer of the highway, was sued alleging negligence in failing to recommend guardrails around the bridge pier. Brighton's defense was that the design was in accordance with the design standards and criteria of the Department of Highways which specified that no guardrails be located adjacent to or around that bridge pier, and that <u>Brighton had no discretion to alter, change or deviate from the standard design. In this factual situation, we said that Brighton's failure to recommend guardrails was not negligence.</u>

*McCabe Powers Body Co. v. Sharp*, 594 S.W.2d 592, 594 (Ky. 1980).

As *McCabe* and *Padgett* make clear, the analysis of whether an independent contractor can be held liable by third parties for its negligence in performing its contract with the principal depends on the nature and the scope of the work it was hired to perform and not on immunity. As explained by the United States Court of Appeals for the Sixth Circuit, *Padgett* (upon which *Rigsby* relied) is grounded on basic common law negligence principles sounding in duty. *Renaissance/Valley Farms, LLC v. T & C Contracting, Inc.*, 614 F. App'x 805, 817 (6th Cir. 2015). Contractors and subcontractors do not have "a common law duty to second guess or reevaluate the engineering plans provided to them" by their principal if they were not hired to provide their engineering expertise. *Id.* It is the nature of the work that provides a defense by limiting or curtailing the element of duty; it has nothing whatsoever to do with immunity.

Thus, in this case, it is imperative to identify what the Engineers were hired to do. Were they simply charged with implementing plans already prepared

-16-

by the state or were they tasked with applying their independent judgment and their knowledge of engineering principles in the design of I-65? Mr. Andre Antranik Johannes, a KYTC Branch Manager for Roadway Rehabilitation, oversaw the widening of I-65. According to Mr. Johannes, the Engineers were responsible for designing the plans for the rewidening project, and then submitting those plans for approval by KYTC and ultimately FHWA. Thus, this is not a case, like *Padgett*, where the work at issue was merely implementation of a design plan already prepared by the Commonwealth. The Engineers' work was to use their expertise to prepare the design plans. The Engineers were required to do much more than mechanically adhere to predetermined design standards; they were required to use their skill and expertise to assess whether a design exception was necessary, and, if so, to recommend a suitable and safe alternative. Moreover, unlike *Rigsby* where it appears there was no leeway with respect to the placement of guardrails, the Engineers as well as KYTC admit that they were permitted to prepare and submit designs outside the *Green Book* so long as they prepared an appropriate request for a design exception to support the deviation. Whether they deviated from the standard of care required of them in preparing and submitting the DES is contested.

Of course, as the Engineers point out, their plans, including all design exceptions were accepted and approved by both KYTC and FHWA, and once

-17-

approval was granted by FHWA neither the Engineers nor KYTC had the discretion to deviate from the DES. However, acceptance/approval by these governmental entities, even pursuant to statute, cannot absolve the Engineers from their own design negligence in the face of Appellants' allegations that the Engineers' negligence caused death or bodily injury. *Saylor v. Hall*, 497 S.W.2d 218 (Ky. 1973) (citing RESTATEMENT OF TORTS (SECOND) § 385 to the effect that contractor is liable for all foreseeable injuries, even if the landowner has accepted/approved the work and dangerous conditions are not concealed).[12] "This rule from *Saylor* is clear; the acceptance or non-acceptance by the possessor does not affect the liability of the party who creates a dangerous condition on the land of the possessor." *Gilbert v. Murray Paving Co., Inc.*, 147 S.W.3d 736, 743 (Ky. App. 2003).[13]

Consistent with the modern view, this Court recently held that a private, engineering consultant was not immunized from liability simply because

---

[12] At one time, Kentucky adhered to the acceptance/approval doctrine; however, like most other states, Kentucky abandoned the doctrine in favor of what has been coined the "modern view." *Suneson v. Holloway Constr. Co.*, 992 S.W.2d 79 (Ark. 1999) (collecting cases and discussing the history of the accepted work doctrine).

[13] In a well-reasoned opinion, which we find illuminating, the Supreme Court of South Carolina adopted the modern rule that acceptance/approval, even by the State, does not cut off a private contractor's negligence. In so doing, that Court explained how the old acceptance/approval doctrine was inconsistent with common law negligence principles. *Dorrell v. S.C. Dep't of Transp.*, 361 S.C. 312, 324, 605 S.E.2d 12, 18 (S.C. 2004) ("APAC cannot escape liability simply by completing its work and having it accepted by SCDOT. APAC had a duty of care that extended above and beyond compliance with the contract, and whether APAC breached that duty of care is a question of fact that must be decided by a jury.").

its roadway design plan was approved by a sovereign entity. *McCarty v. Willett*, No. 2022-CA-1536-MR, 2023 WL 7931118 (Ky. App. Nov. 17, 2023). In that case, a woman was killed after flood waters swept her car from a bridge in Monroe County. Among others, the woman's estate sued two private contractors that designed the bridge and its road approaches, ACES and QK4. The circuit court granted summary judgment to the contractors on the basis that they were entitled to immunity. We reversed and remanded after concluding that there was no legal basis to support extension of immunity to such private contractors, even though their designs complied with Kentucky's standards and were expressly approved by Monroe County. To wit, we explained:

> QK4 argues that, in addition to being entitled to the same immunity as the county, it was further cloaked with immunity when the county approved its structural design. QK4 contends that when the Monroe County Fiscal Court approved the bridge design, the fiscal court immunized QK4 from any personal injury claims. It contends that QK4 could not make the legislative decision for the fiscal court as to which design to implement based on the limited budget available and that QK4's design achieved the objectives of supporting traffic and staying standing during a flood. QK4 argues that there is no evidence of any kind that its design did not meet Kentucky engineering standards and perform as Monroe County had intended.
>
> QK4's argument elides immunity derived from a governmental body with common law liability for negligence. Its contention that consulting engineers are protected by "derivative sovereign immunity" based on the "government contractor defense" is not in our case

-19-

> law. As we have already determined, QK4 is not entitled to governmental immunity derived from the county. The case upon which QK4 relies, *Rigsby v. Brighton Engineering Company*, 464 S.W.2d 279, 281 (Ky. 1970), contains a straightforward negligence analysis that does not extend sovereign or governmental immunity to the contractor.

*Id.* at \*8-9.[14]

Having thoroughly reviewed the law and the record, we are firmly convinced the circuit court erred as a matter of law when it concluded that the Engineers were immune from liability. The mere fact that the Engineers contracted with KYTC did not transform them into state actors or quasi-state actors for purposes of immunity. The engineering firms were neither created by nor at the behest of the Commonwealth, nor do they work exclusively for it. *See Howard v. Big Sandy Area Development District, Inc.*, 626 S.W.3d 466, 471 (Ky. 2020). And our case law is clear that private contractors working for the state are no longer entitled to immunity from their negligence. *Codell Constr. Co.*, 56 S.W.2d at 957.[15]

---

[14] We recognize that *McCarty*, an unpublished decision, is not binding precedent. We cite to it here for illustrative purposes only. Kentucky Rules of Appellate Procedure ("RAP") 41.

[15] Because we have concluded that use of the term "immunity" by the Engineers and the circuit court was a misnomer, we decline to address Appellants' argument that the Engineers failed to plead immunity as part of their answers. This case was never about immunity.

This is an ordinary negligence case. The contractors claim they performed within the scope of their contracts and that their work was approved by state and federal authorities, which should absolve them from further liability to third parties. As already explained, however, acceptance/approval is not an absolute defense where, as here, the Engineers were hired for their design expertise in preparing the DES and any related exceptions thereto.[16] In carrying out this work, the Engineers were required to use the degree of care and skill reasonably expected of competent professionals of the same class and working under similar circumstances. Whether they did so is a hotly contested issue with conflicting

---

[16] This is not to say, of course, that KYTC's and FHWA's approval of the DES as prepared and submitted by the Engineers is irrelevant. Even though the Engineers cannot rely on the approval of their design plans to absolve them from liability as a matter of law, at trial they may be able to introduce the approvals as one factor bearing on the reasonableness of their conduct before a jury. As the Supreme Court of Tennessee explained:

> Certainly a contractor may point to the inspection and acceptance of his completed work by a sophisticated and conscious owner as being a circumstance bearing upon the reasonableness of the conduct of the contractor.
>
> We are of the opinion, however, that the older rule, discharging the independent contractor automatically and as a matter of law in all situations, upon the acceptance of his work, is not the better view. In our opinion, if an independent contractor is guilty of negligence in performing his work in such a way that it could reasonably be foreseen that the owner or third parties would probably sustain personal injury or property damage as a result of the negligent condition, then the independent contractor should not, as a matter of law, be discharged merely because his work has been accepted and delivered to the owner.

*Johnson v. Oman Constr. Co., Inc.*, 519 S.W.2d 782, 788 (Tenn. 1975).

evidence having been submitted by the parties precluding summary judgment on Appellants' claims.

### B. Are Appellants' State Claims Preempted By Federal Law?

The circuit court also concluded that Appellants' state law negligence and wrongful death claims were preempted by federal law. On appeal, Appellants maintain that the circuit court erred as a matter because the Engineers cannot show that the federal laws at issue either expressly or implicitly supplant Appellants' common law causes of action against them.

We have previously summarized federal preemption as follows:

> The doctrine of federal preemption is derived from the supremacy clause of the United States Constitution, Article VI. *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819), determined that a state law that conflicts with federal law is without effect. However, the historic police powers of the state are not preempted in the absence of "the clear and manifest purpose of Congress" to do so. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947). The United States Supreme Court has stated that it is reluctant to interpret a federal statute in such a way as to find preemption of subjects traditionally governed by state law. *CSX Transportation v. Easterwood*, 507 U.S. 658, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993). Determination of whether a federal statute preempts a state cause of action depends on the purpose of Congress in enacting the federal statute. *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S. Ct. 1185, 55 L. Ed. 2d 443 (1978); *Niehoff v. Surgidev Corp.*, 950 S.W.2d 816, 820 (Ky. 1997). "Congressional intent is the touchstone of all preemption analysis." *Keck v. Com. ex rel. Golden*, 998 S.W.2d 13, 15 fn. 4 (Ky. App. 1999).

> The congressional purpose to preempt a state remedy may be determined in either of two ways. The first is whether the preemption is found in the express language of the statute. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992). The second is to find preemption implied from the structure and purpose of the statute. Implied preemption occurs when the state law actually conflicts with federal law or where the federal law so thoroughly occupies the legislative field that it may be reasonably inferred that Congress left no room for the state to supplement it. *Niehoff* at 820.

*Wright v. General Elec. Co.*, 242 S.W.3d 674, 678 (Ky. App. 2007).

Congress has charged the FHWA with overseeing the design, construction, and maintenance of the NHS. *See* 49 U.S.C. § 104,[17] 23 U.S.C. §

---

[17] 49 U.S.C. § 104 provides:

(a) The Federal Highway Administration is an administration in the Department of Transportation.

(b)(1) The head of the Administration is the Administrator who is appointed by the President, by and with the advice and consent of the Senate. The Administrator reports directly to the Secretary of Transportation.

(2) The Administration has a Deputy Federal Highway Administrator who is appointed by the Secretary, with the approval of the President. The Deputy Administrator shall carry out duties and powers prescribed by the Administrator.

(3) The Administration has an Assistant Federal Highway Administrator appointed in the competitive service by the Secretary, with the approval of the President. The Assistant Administrator is the chief engineer of the Administration. The Assistant Administrator shall carry out duties and powers prescribed by the Administrator.

(c) The Administrator shall carry out –

(1) duties and powers vested in the Secretary by chapter 4 of title 23 for highway safety programs, research, and development related to highway

315.[18] The NHS design regulations are set forth in 23 C.F.R. § 625.1 *et seq.* The

policy behind the regulations is set forth in 23 C.F.R. § 625.2 as follows:

> (a) Plans and specifications for proposed National
> Highway System (NHS) projects shall provide for a
> facility that will –
>
> > (1) Adequately serve the existing and planned
> > future traffic of the highway in a manner that is
> > conducive to safety, durability, and economy of
> > maintenance; and
> >
> > (2) Be designed and constructed in accordance
> > with criteria best suited to accomplish the
> > objectives described in paragraph (a)(1) of this
> > section and to conform to the particular needs of
> > each locality.
>
> (b) Resurfacing, restoration, and rehabilitation (RRR)
> projects shall be constructed in accordance with
> standards that preserve and extend the service life of

---

> design, construction and maintenance, traffic control devices,
> identification and surveillance of accident locations, and highway-related
> aspects of pedestrian safety; and
>
> (2) additional duties and powers prescribed by the Secretary.
>
> (d) Notwithstanding the provisions of sections 101(d) and 144 of title 23, highway
> bridges determined to be unreasonable obstructions to navigation under the
> Truman-Hobbs Act may be funded from amounts set aside from the discretionary
> bridge program. The Secretary shall transfer these allocations and the
> responsibility for administration of these funds to the United States Coast Guard.

[18] 23 U.S.C. § 315 provides:

> Except as provided in sections 202(a)(5), 203(a)(3), and 205(a) of this title, the
> Secretary is authorized to prescribe and promulgate all needful rules and
> regulations for the carrying out of the provisions of this title. The Secretary may
> make such recommendations to the Congress and State transportation departments
> as he deems necessary for preserving and protecting the highways and insuring
> the safety of traffic thereon.

highways and enhance highway safety. Resurfacing, restoration, and rehabilitation work includes placement of additional surface material and/or other work necessary to return an existing roadway, including shoulders, bridges, the roadside, and appurtenances to a condition of structural or functional adequacy.

(c) An important goal of the FHWA is to provide the highest practical and feasible level of safety for people and property associated with the Nation's highway transportation systems and to reduce highway hazards and the resulting number and severity of accidents on all the Nation's highways.

While the regulations specify design standards, the standards are not absolute, and exceptions are permitted so long as approval is received from the FHWA. 23 C.F.R. § 625.3.

Neither the enabling statutes nor the regulations contain an express statement of preemption. While the federal government has clearly opted to regulate highway construction and design by the imposition of certain standards, we cannot appreciate how Appellants' state law causes of action conflict with federal law. Kentucky's common law negligence and wrongful death causes of action appear to us to be in harmony with federal law, and therefore, the circuit court incorrectly concluded that federal preemption barred Appellant's state law claims. *See Russell v. Johnson & Johnson, Inc.*, 610 S.W.3d 233, 240 (Ky. 2020) (emphasis omitted) ("Instead, the cases make clear the limited federal preemption only applies to the extent Kentucky's parallel tort claims seek to impose a higher

standard than federal law; our claims must be in harmony with the federal regulations.").

### III. CONCLUSION

For the reasons set forth above, we reverse the Fayette Circuit Court's orders of summary judgment and remand for further proceedings.

ALL CONCUR.

BRIEFS FOR APPELLANTS KRISTINA L. IVES, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE AND ADMINISTRATRIX OF THE ESTATE OF HIRAM DUDLEY IVES III AND AS NEXT FRIEND FOR HIRAM MILLER IVES AND JUNE LELIA IVES, UNMARRIED INFANTS:

Benjamin Lee Kessinger, III
Mason Moore Kessinger
Lexington, Kentucky

BRIEFS FOR APPELLANTS JENNINGS L. COPLEY AND NECTO ARCHITECTURE, P.S.C.:

Bartley K. Hagerman
Lexington, Kentucky

BRIEFS FOR APPELLEES HMB PROFESSIONAL ENGINEERS, INC.; HAWORTH-MEYER-BOLEYN PROFESSIONAL ENGINEERS, INC.; AND D. PAUL LINCKS:

John D. "Chip" Clay
Denise M. Motta
Louisville, Kentucky

BRIEFS FOR APPELLEES HDR ENGINEERING, INC., AND JAMES L. GUINN:

John W. Hays
K. Brad Oakley
Lexington, Kentucky

BRIEFS FOR APPELLEES PARSONS BRINCKERHOFF, INC.; WSP USA, INC.; AND SUSAN ROWLAND SLADE, AS PERSONAL REPRESENTATIVE AND EXECUTRIX OF THE ESTATE OF FRANK STEVEN SLADE:

William G. Geisen
Cassandra L. Welch
Covington, Kentucky